# UNITED STATES *v.* STAPF ET AL., EXECUTORS AND TRUSTEES.

No. 54. Argued October 23–24, 1963.—Decided December 2, 1963.

*Wayne G. Barnett* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Oberdorfer* and *Robert N. Anderson.*

*W. M. Sutton* argued the cause for respondents. With him on the brief was *H. A. Berry.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

Respondents brought this suit against the Government in the District Court for the Northern District of Texas for a refund of estate taxes paid pursuant to an asserted deficiency. The Court of Appeals for the Fifth Circuit held that respondents were entitled to certain marital deductions under § 812 (e) of the Internal Revenue Code of 1939 [1] and also to deductions for other payments as

---

[1] 62 Stat. 117 (1948), now Int. Rev. Code of 1954, § 2056 (b) (4) (B). The provisions involved are § 812 (e) (1) (A) and (E) (ii):

"(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

"(1) ALLOWANCE OF MARITAL DEDUCTION.—

"(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

.    .    .    .    .

"(E) Valuation Of Interest Passing To Surviving Spouse.—In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

.    .    .    .    .

"(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

"claims against the estate" and "administration expenses" under § 812 (b)(3) and (2) of the 1939 Code.[2] 309 F. 2d 592. We granted certiorari to consider questions of statutory interpretation important to the administration of the federal estate tax laws. 372 U. S. 928.

Lowell H. Stapf died testate on July 29, 1953, a resident and domiciliary of Texas, a community property jurisdiction. At the time of his death he owned, in addition to his separate estate, a substantial amount of property in community with his wife. His will required that his widow elect either to retain her one-half interest in the community or to take under the will and allow its terms to govern the disposition of her community interest. If Mrs. Stapf were to elect to take under the will, she would be given, after specific bequests to others, one-third of the community property and one-third of her husband's sepa-

---

[2] 53 Stat. 123 (1939), now Int. Rev. Code of 1954, § 2053 (a). Subsequent references will be to the 1939 Code under which the case arose. The pertinent provisions of § 812 (b) authorize deductions for:

"(b) Expenses, Losses, Indebtedness, and Taxes. — Such amounts—

"(1) for funeral expenses,

"(2) for administration expenses,

"(3) for claims against the estate, and

"(4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

"as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth . . . ."

rate estate. By accepting this bequest she would allow her one-half interest in the community to pass, in accordance with the will, into a trust for the benefit of the children. It was further provided that if she chose to take under the will the executors were to pay "all and not merely one-half" of the community debts and administration expenses.

The relevant facts and computations are not in dispute. The decedent's separate property was valued at $65,100 and the community property at $258,105.[3] The only debts were community debts totalling $32,368. The administration expenses, including attorneys' fees, were $4,073. If Mrs. Stapf had not elected to take under the will, she would have retained her fully vested one-half interest in the community property ($129,052) which would have been charged with one-half of the community debts ($16,184) and 35% of the administration expenses ($1,426).[4] Thus, as the parties agree, she would have received a net of $111,443.

In fact Mrs. Stapf elected to take under the will. She received, after specific bequests to others, one-third of the combined separate and community property, a devise valued at $106,268,[5] which was $5,175 less than she would

---

[3] The figures stated throughout are rounded to the nearer dollar.

[4] The apportionment of administration expenses was initially determined by a revenue examiner and was sustained by the District Court. 189 F. Supp. 830, 838.

[5] This includes $700 for an automobile specifically bequeathed to Mrs. Stapf. There is some question as to whether Mrs. Stapf should be credited with receiving the full value of the automobile ($1,400) or only a one-half interest ($700). For present purposes the difference is immaterial for it is insufficient to alter the basic fact that the widow did not receive a net benefit by electing to take under the will. We therefore accept the figures used by the courts below and consider Mrs. Stapf as receiving only a one-half interest ($700) in the automobile.

have received had she retained her community property and refused to take under the will.[6]

In computing the net taxable estate, the executors claimed a marital deduction under § 812 (e)(1) of the Internal Revenue Code of 1939 for the full value of the one-third of decedent's separate estate ($22,367) which passed to his wife under the will. The executors also claimed a deduction for the entire $32,368 of community debts as "claims against the estate" under § 812 (b)(3) and for the entire $4,073 of expenses as "administration expenses" under § 812 (b)(2). The Commissioner of Internal Revenue disallowed the marital deduction and the deductions for claims and administration insofar as these represented debts (50%) and expenses (35%) chargeable to the wife's one-half of the community. Respondents then instituted this suit for a tax refund. The District Court allowed the full marital deduction but disallowed the disputed claims and expenses. 189 F. Supp. 830. On cross-appeals the Court of Appeals, with one judge dissenting on all issues, held that each of the claimed deductions was allowable in full. 309 F. 2d 592. For reasons stated below, we hold that the Commissioner was correct and that none of the disputed deductions is allowable.[7]

---

[6] The parties agree that the net effect of taking under the will may be computed by another method. As explained by the Court of Appeals, "Computed differently but with the same result, the widow retained a one-third interest out of the one-half of the community owned by her, thereby transferring only a one-sixth interest under the election to take. Under this method of computation she transferred property having a valuation of $27,541.16 and received property being the one-third interest in the separate property of the husband and the one-half interest in the automobile of the aggregate value of the $22,366.66, making a net loss to her of $5,174.50." 309 F. 2d 592, 594.

[7] The Commissioner did in fact allow a marital deduction for $700, representing a one-half interest in the automobile. 309 F. 2d 592,

## I. The Marital Deduction.

By electing to take under the will, Mrs. Stapf, in effect, agreed to accept the property devised to her and, in turn, to surrender property of greater value to the trust for the benefit of the children. This raises the question of whether a decedent's estate is allowed a marital deduction under § 812 (e)(1)(E)(ii) of the 1939 Code where the bequest to the surviving spouse is on the condition that she convey property of equivalent or greater value to her children. The Government contends that, for purposes of a marital deduction, "the value of the interest passing to the wife is the value of the property given her less the value of the property she is required to give another as a condition to receiving it." On this view, since the widow had no net benefit from the exercise of her election, the estate would be entitled to no marital deduction. Respondents reject this net benefit approach and argue that the plain meaning of the statute makes detriment to the surviving spouse immaterial.

Section 812 (e)(1)(A) provides that "in general" the marital deduction is for "the value of any interest in property which passes . . . from the decedent to his surviving spouse." Subparagraph (E) then deals specifically with the question of valuation:

> "(E) Valuation Of Interest Passing To Surviving Spouse.—In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

.        .        .        .        .

597, n. 5. That allowance was not challenged by the Government in the District Court. We therefore do not review the judgment of the Court of Appeals insofar as it allows this $700 deduction.

"(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

The disputed deduction turns upon the interpretation of (1) the introductory phrase "any obligation imposed by the decedent with respect to the passing of such interest," and (2) the concluding provision that "such . . . obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

The Court of Appeals, in allowing the claimed marital deduction, reasoned that since the valuation is to be "as if" a gift were being taxed, the legal analysis should be the same as if a husband had made an *inter vivos* gift to his wife on the condition that she give something to the children. In such a case, it was stated, the husband is taxable in the full amount for his gift. The detriment incurred by the wife would not ordinarily reduce the amount of the gift taxable to the husband, the original donor.[8] The court concluded:

"Within gift tax confines the community property of the widow passing under the will of the husband to others may not be 'netted' against the devise to

_____

[8] See, *e. g.*, *Commissioner* v. *Wemyss*, 324 U. S. 303. There the Court stated that under the Revenue Act of 1932 mere detriment to the transferee did not constitute the requisite "consideration in money or money's worth" to the transferor so as to relieve him of gift tax liability. Respondents' reliance on this case ignores that it involved neither a determination of who was to be considered the beneficial donee nor a valuation of the gift received by such donee.

the widow, and thus testator, were the transfer inter vivos, would be liable for gift taxes on the full value of the devise." 309 F. 2d 592, 598.

This conclusion, based on the alleged plain meaning of the final gift-amount clause of § 812 (e)(1)(E) (ii),[9] is not supported by a reading of the entire statutory provision. First, § 812 (e) allows a marital deduction only for the decedent's gifts or bequests which pass "to his surviving spouse." In the present case the effect of the devise was not to distribute wealth to the surviving spouse, but instead to transmit, through the widow, a gift to the couple's children. The gift-to-the-surviving-spouse terminology reflects concern with the status of the actual recipient or donee of the gift. What the statute provides is a "marital deduction"—a deduction for gifts *to the surviving spouse*—not a deduction for gifts to the children or a deduction for gifts to privately selected beneficiaries. The appropriate reference, therefore, is not to the value of the gift moving from the deceased spouse but to the net value of the gift received by the surviving spouse.

Second, the introductory phrases of § 812 (e)(1)(E)(ii) provide that the gift-amount determination is to be made "where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest . . . ." The Government, drawing upon the broad import of this language, argues: "An undertaking by the wife to convey property to a third person, upon which her receipt of property under the decedent's will is conditioned, is plainly an 'obligation imposed by the de-

---

[9] The portion of the language relied upon provides that the valuation be "in the same manner as if the amount of a gift to such spouse of such interest were being determined."

cedent with respect to the passing of such interest.' "
Respondents contend that "incumbrance or obligation"
refers only to "a payment to be made *out of* prop-
erty passing to the surviving spouse." Respondents'
narrow construction certainly is not compelled by a
literal interpretation of the statutory language. Their
construction would embrace only, for example, an obliga-
tion *on* the property passing whereas the statute speaks
of an obligation *"with respect* to the passing" gift.
Finally, to arrive at the real value of the gift "such . . .
obligation shall be taken into account . . . ." In con-
text we think this relates the gift-amount determination
to the net economic interest received by the surviving
spouse.

   This interpretation is supported by authoritative dec-
larations of congressional intent. The Senate Committee
on Finance, in explaining the operation of the marital
deduction, stated its understanding as follows:

   "If the decedent bequeaths certain property to his
   surviving spouse *subject,* however, *to her agreement,*
   or a charge on the property, for payment of $1,000
   to X, the value of the bequest (and, accordingly, the
   value of the interest passing to the surviving spouse)
   is the value, reduced by $1,000, of such property."
   S. Rep. No. 1013, 80th Cong., 2d Sess., Pt. 2, p. 6.
   (Emphasis added.)

The relevant Treasury Regulation is directly based upon,
if not literally taken from, such expressions of legislative
intent. Treas. Reg. 105, § 81.47c (b) (1949). The Reg-
ulation specifically includes an example of the kind of
testamentary disposition involved in this case:

   "A decedent bequeathed certain securities to his
   wife in lieu of her interest in property held by
   them as community property under the law of the

State of their residence. The wife elected to relinquish her community property interest and to take the bequest. For the purpose of the marital deduction, the value of the bequest is to be reduced by the value of the community property interest relinquished by the wife." [10]

We conclude, therefore, that the governing principle, approved by Congress and embodied in the Treasury Regulation,[11] must be that a marital deduction is allowable only to the extent that the property bequeathed to the surviving spouse exceeds in value the property such spouse is required to relinquish.

---

[10] Treas. Reg. 105, § 81.47c (b) (3) (1949), now Treas. Reg. § 20.2056 (b)–4 (b) (3) (1958). The Regulation provides another relevant illustration "of property interests which passed from the decedent to his surviving spouse subject to the imposition of an obligation by the decedent: (1) A decedent devised a residence valued at $25,000 to his wife, with a direction that she pay $5,000 to his sister. For the purpose of the marital deduction, the value of the property interest passing to the wife is only $20,000."

See Lowndes and Kramer, Federal Estate and Gift Taxes (1962), § 17.4: "[W]hat the Regulations are driving at seems to be this. If a decedent bequeaths property to his wife in lieu of her interest in community property, which is not part of his estate and which does not pass to her from him, it seems clear that the only thing which the surviving spouse actually receives from the decedent is the excess of the interest bequeathed to her over and above the value of her interest in the community property. Therefore, this should be the only amount which qualifies for the marital deduction . . . ."

[11] This Court has frequently "given considerable and in some cases decisive weight to . . . interpretative Regulations of the Treasury and of other bodies that were not of adversary origin." *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140. Although the weight to be given to an interpretative rule varies with its statutory and legislative context, a Treasury Regulation is particularly persuasive when, as in this case, it is supported by declarations of congressional intent.

Our conclusion concerning the congressionally intended result under § 812 (e)(1) accords with the general purpose of Congress in creating the marital deduction. The 1948 tax amendments were intended to equalize the effect of the estate taxes in community property and common-law jurisdictions.[12] Under a community property system, such as that in Texas, the spouse receives outright ownership of one-half of the community property and only the other one-half is included in the decedent's estate. To equalize the incidence of progressively scaled estate taxes and to adhere to the patterns of state law, the marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. Although applicable to separately held property in a community property state, the primary thrust of this is to extend to taxpayers in common-law States the advantages of "estate splitting" otherwise available only in community property States. The purpose, however, is only to permit a married couple's property to be taxed in two stages and not to allow a tax-exempt transfer of wealth into succeeding generations. Thus the marital deduction is generally restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate.[13] Respondents' construction of § 812 (e)(1) would, nevertheless, permit one-half of a spouse's wealth to pass from one generation to another without being subject either to gift or estate

---

[12] See H. R. Rep. No. 1274, 80th Cong., 2d Sess., pp. 24–26; S. Rep. No. 1013, 80th Cong., 2d Sess., pp. 26–29; Sugarman, Estate and Gift Tax Equalization—The Marital Deduction (1948), 36 Cal. L. Rev. 223, 228–230.

[13] The congressional concern with the eventual taxability of marital-deduction property is indicated by the terminable interest rule of § 812 (e)(1)(B). See S. Rep. No. 1013, *supra*, note 12, p. 28; Warren and Surrey, Federal Estate and Gift Taxation (1961), pp. 759–760.

taxes.[14] We do not believe that this result, squarely contrary to the concept of the marital deduction, can be justified by the language of § 812 (e) (1). Furthermore, since in a community property jurisdiction one-half of the community normally vests in the wife, approval of the claimed deduction would create an opportunity for tax reduction that, as a practical matter, would be more readily available to couples in community property jurisdictions than to couples in common-law jurisdictions.[15] Such a result, again, would be unnecessarily inconsistent with a basic purpose of the statute.

Since in our opinion the plain meaning of § 812 (e) (1) does not require the interpretation advanced by respondents, the statute must be construed to accord with the clearly expressed congressional purposes and the relevant Treasury Regulation. We conclude that, for estate tax purposes, the value of a conditional bequest to a widow should be the value of the property given to her less the value of the property she is required to give to another. In this case the value of the property transferred to Mrs. Stapf ($106,268) must be reduced by the value of the community property she was required to relinquish ($111,443). Since she received no net benefit, the estate is entitled to no marital deduction.

---

[14] The Court of Appeals recognized the effect of its decision: "Here estate taxes are due now on the property of the husband with the devise to the widow excluded. It is a part of the marital deduction or exclusion on which taxes are deferred to the estate of the widow to be assessed on so much of it as survives on another day. The net of the transfer by the widow became subject to gift taxes at the time of the transfer. The property transferred by the widow will, to the extent of an amount equal to the devise to her, escape both gift and estate taxes." 309 F. 2d 592, 598. For an illustration of the tax effects of the decision, see the dissent of Judge Wisdom. 309 F. 2d, at 608–609.

[15] See 76 Harv. L. Rev. 1671, 1675.

## II. Claims Against the Estate and Administration Expenses.

### A. *Claims Against the Estate.*

Section 812 (b)(3) of the 1939 Code provides for the deduction from the gross estate of "Such amounts . . . for claims against the estate . . . as are allowed by the laws of the jurisdiction . . . under which the estate is being administered . . . ." The community debts in this case total $32,368, consisting largely of taxes due for past income. The decedent's will directed that his executors pay "all and not merely one-half" of the community debts. Under Texas law, absent this provision, only one-half of the community debts would be charged to the decedent's half of the community. The issue presented is whether, as a result of the testamentary direction, a deduction may be taken for the entire amount of the community debts as "claims against the estate . . . allowed by" state law.

The first question to consider is whether the claim is of the type intended to be deductible.[16] It cannot be denied that where the executors are directed to pay the debts of another party the substance of the direction is to confer a beneficial gift on that party. Respondents' contentions in effect require that § 812 (b)—designed to

---

[16] See *Morgan* v. *Commissioner*, 309 U. S. 78, 80–81 (concerning the meaning of "general power of appointment" under a federal revenue act): "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." See Hart and Wechsler, The Federal Courts and the Federal System (1953), pp. 456–457.

allow deductions for "expenses, losses, indebtedness, and taxes"—be construed to authorize tax-free gifts despite the general policy that wealth not be transmitted tax free at death.[17] The provisions of § 812 (b) demonstrate that it was not intended to allow deductions for voluntary transfers that deplete the estate merely because the testator described the transfers or payments as the settlement of "claims" or "debts." This intent is evidenced by the treatment of claims or debts founded upon promises or agreements. The section carefully restricts the deductible amount "in the case of claims against the estate . . . or any indebtedness . . . , when founded upon a promise or agreement, . . . to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. . . ." Absent such an offset or augmentation of the estate, a testator could disguise transfers as payments in settlement of debts and claims and thus obtain deductions for transmitting gifts. As this requirement suggests, a deduction under § 812 (b) should not be predicated solely on the finding that a promise or claim is legally enforceable under the state laws governing the validity of contracts and wills.[18] The claims referred to by the statute are those "claims against" the property of the deceased which are allowed by and enforceable under the laws of the administering State and not those claims created by the deceased's gratuitous assumption of debts attaching to the property of another.

---

[17] See, e. g., Lowndes and Kramer, op. cit., supra, note 10, §§ 1.2, 2.2.

[18] The majority of the Court of Appeals passed over the adequate-consideration provision because "the debts here were in the main for income taxes and ad valorem taxes, debts imposed by law." 309 F. 2d 592, 596. However, since one-half of the taxes were chargeable to the wife's community property, the disputed claims were in fact imposed on the estate only by the terms of the will and the widow's election to take under those terms.

The pertinent Treasury Regulation states that the deductible claims are "such only as represent personal obligations of the decedent . . . ." [19]   We cannot agree with respondents' contention that the debts chargeable to the wife's community property are "personal obligations" of the decedent within the meaning of the Regulation.   It is true, as the Court of Appeals stated, that under Texas law the husband, as manager of the community property, was personally liable for the full amount of community debts. 309 F. 2d 592, 596.   His liability for the portion of debts chargeable to his wife's community property was, however, accompanied by a right over against her half of the community. *Ibid.*   The basic rule of Texas law is that the community is liable for its debts, and, accordingly, half the debts attach to the wife's community property.   Since the will of the decedent cannot be allowed to define what is an "obligation" or a "claim," where, as in this case, the community is solvent, the debts chargeable to the wife's property cannot realistically be deemed "personal obligations" of the decedent or "claims against" his estate.

The provisions of § 812 (b), like those of § 812 (e) allowing marital deductions, must be analyzed in light of the congressional purpose of equalizing the incidence of

---

[19] Treas. Reg. 105, § 81.36 (1942), now Treas. Reg. § 20.2053–4 (1958): "Claims against the estate.—The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. . . .   Only claims enforceable against the decedent's estate may be deducted. . . ."   With regard to the disputed deduction for the wife's share of community debts, it has been suggested that: "because the decedent's estate is not bound, even under state law, until after the widow elects, allowance of the deduction may be incompatible with the regulation requiring that the claims be in existence at the decedent's death.   This requirement could only be fulfilled by an election which would work retroactively."   37 Tul. L. Rev. 297, 315.

taxation upon couples in common-law and community property jurisdictions. If the deductible "claims" were to include all community debts that might be, in a literal sense, "personal obligations" of the husband as surety, then a married couple in a community property State might readily increase their tax-free estate transfers. For example, by borrowing against the value of the community property and then requiring that his executors pay all community debts, the husband could obtain a tax deduction for what would in effect be a testamentary gift to his wife.[20] That gift might or might not qualify for treatment as a marital deduction,[21] but it certainly was not intended to be made deductible by § 812 (b). A contrary interpretation of § 812 (b)(3) would, in our opinion, generally tend to create unwarranted tax advantages for couples in community property States.[22]

## B. *Administration Expenses.*

The testator's will provided that administration expenses, as well as community debts, should be paid entirely out of his half of the community property. The administration expenses totalled $4,073. Under Texas law an allocable share of these costs was chargeable to the

---

[20] 309 F. 2d 592, 604 (Wisdom, J., dissenting): "For example, in the twilight of their years, a couple with community property worth $1,000,000 could borrow an additional $1,000,000 and invest it in securities, using the $2,000,000 as collateral. As a result, the community property would be increased from one million to two million dollars, and would have debts against it of one million dollars. If the husband provided by will that all community debts be paid out of his share of the community property, upon his death his share of the community property would be worth $1,000,000. All of this, however, would be matched by deductible community debts. Thus, under the Court's holding, the entire 'net' estate of $1,000,000 would pass, untaxed, to the wife."

[21] See *infra*, p. 134.

[22] See 76 Harv. L. Rev. 1671, 1675.

surviving spouse's community property. That allocable share was determined to be 35% or $1,426. The issue is whether the executors' payment of the costs attributable to the wife's property are deductible "administration expenses . . . allowed by" the law of the State under § 812 (b)(2).

The interpretation of "administration expenses" under § 812 (b)(2) involves substantially the same considerations that determine the interpretation of "claims against the estate" under § 812 (b)(3). In both instances, the testator, by directing that payment be made of debts chargeable to another or to non-estate property, reduces his net estate and in effect confers a gift or bequest upon another. We believe that the provisions of § 812 (b), like those of § 812 (e) providing the marital deduction, must be read in light of the general policies of taxing the transmission of wealth at death and of equalizing the tax treatment of couples in common-law and in community property jurisdictions. We hold, therefore, that a deduction may not be allowed for administration costs chargeable to the surviving spouse's community property.

### C. *The Payment of Debts and Expenses as a Marital Gift.*

In our view the payments made as a result of the testator's assumption of responsibility both for his wife's share of the community debts and for her share of the administration expenses are more properly characterized as marital gifts rather than as "claims" or "expenses." Since these gifts were to the surviving spouse, respondents contend that a marital deduction should be allowed. Our interpretation of § 812 (e) disposes of this argument, for under any view of the facts, even if these items are deemed to be gifts to the wife, the will required her to surrender property more valuable than the bequests

she received.[23]    In the absence of a net benefit passing to the surviving spouse, no marital deduction is allowable.

The judgment of the Court of Appeals for the Fifth Circuit is reversed and the case remanded for proceedings in accordance with this opinion.

*It is so ordered.*

---

[23] Respondents concede that "even with the benefit of the bequest of 1/3 of the separate property to her and the benefit of the debt and expense assumption provisions, Mrs. Stapf ended up with less than she would have owned had she elected to take against the will." Her share of the gross community assets was $129,052. The portion of the debts ($16,184) and administration expenses ($1,426) chargeable to her was $17,610. When the assumption of the debts and expenses is viewed as a legacy, the effect of taking under the will may be summarized as follows: Mrs. Stapf, in effect retained one-third of the total community property remaining after certain bequests ($83,902; see note 5, *supra*) and allowed the balance of her community ($129,052 minus $83,902) to pass into the trust for the children. Thus she gave up property worth $45,151. In return she was given separate property valued at $22,367 (see note 6, *supra*) and the benefit of the debt and expense assumption, or $17,610, a total transfer of $39,976. Thus, the exchange produced a net loss to Mrs. Stapf of $5,175.