ESTATE of Daisy F. CHRIST, Deceased, Robert Johnson Christ, Executor, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 71-1229 to 71-1231.

United States Court of Appeals, Ninth Circuit.

May 9, 1973.

Charles J. Leighton, Jr. (argued), Donald B. Falconer, Helzel, Leighton, Brunn & Deal, Oakland, Cal., for petitioner-appellant.

Stephen Schwartz (argued), Johnnie M. Walters, Asst. U. S. Atty., Meyer Rothwacks, Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and CURTIS,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

The only issue in these consolidated income and estate tax cases is the value of the interest received by the decedent, Daisy F. Christ, when she elected to take under the will of her deceased husband, Andrew, in 1952. The Tax Court resolved the issue adversely to the taxpayer, 54 T.C. 493 (1970). We affirm.

When her husband died, Mrs. Christ was faced with a choice open to many California widows: whether to take her share of the community property by op-

---

* The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

eration of state law, or elect to allow her share of the community property to pass under her husband's will to a trust under which she would receive income for life with limited rights in the principal of all the property of the community. She elected to take under the trust.

■ This election created several federal tax consequences. The widow's surrender of her share of the community property to a trust which will pay her the income from the property for life constitutes a "transfer" under Int.Rev.Code of 1954, § 2036(a)(1). Unless the transfer is a "bona fide sale for an adequate and full consideration in money or money's worth," the property is includible in the widow's gross estate at the time of her death. If the property is included in the widow's estate, it is included at its market value on the date of her death. But the date-of-transfer value of any property received through the exercise of the widow's election is subtracted from the amount included. Int.Rev.Code of 1954, § 2043.

The value placed upon the property received under the election may also be important for federal-income-tax purposes. It has been held in this circuit that the widow's election can be a "purchase," for income tax purposes, of her rights under the trust, justifying amortization deductions from the income she receives from the trust. Gist v. United States, 296 F.Supp. 526 (S.D.Cal.1969), aff'd, 423 F.2d 1118 (9th Cir. 1970).

■ The amount of the "purchase" price, however, is usually not deemed to be the value of the community property surrendered to the trust, but rather is deemed to be the present discounted value of the right to receive income obtained in the election. The reason for so fixing the value is that where the value of the rights surrendered exceeds the value of the rights received, only a portion of what is surrendered is allocated to the "purchase price" of the rights received and the rest is presumed to be a gift to the remaindermen. It is therefore to the advantage of the taxpayer to have a high value assigned to the right to receive income, for three reasons: (1) a sufficiently high value assures that the transfer will be a "bona fide sale," rendering § 2036 inapplicable and removing the trust corpus from the gross estate altogether; (2) a high value will also reduce the size of the gross estate through the operation of § 2043; and (3) a high value will equal a high "purchase price" for the life income and thereby support larger amortization deductions from that income.

Because the issue before the court is the value of the right to receive income at the time of the exchange, the anticipated value of the income is used, rather than its demonstrated value as viewed from the vantage point of hindsight.

The Commissioner has prepared tables for use in calculating the anticipated values of life estates. The tables were followed in this case.

The taxpayer contends that the Commissioner and the Tax Court should not have used the tables. First, the taxpayer argues that the reasonably anticipated yield of the securities in the trust, by any educated estimate, so greatly exceeded the yield forecast in the Commissioner's tables that the use of the tables was unreasonable. Second, he argues that the fair rental value of the residence given in trust, rather than the "table" value, should have been used. Third, he argues that even if the anticipated yield given in the tables could be defended the implicit life expectancies of the table are outmoded and erroneous. He suggests that the Commissioner's tables for annuitants should be used.

The Tax Court adopted the standard of Hanley v. United States, 63 F.Supp. 73, 81, 105 Ct.Cl. 638 (1945), holding that the Commissioner's tables should be used unless their use would produce "a result substantially at variance with the facts." This standard is essentially the same as that previously enunciated in this circuit. United States v. Past, 347 F.2d 7, 13 n. 3 (9th Cir. 1965); Koshland's Estate v. Commissioner, 177 F.2d 851 (9th Cir. 1949). The taxpayer agrees that

this is the correct standard, but urges that the Tax Court either made an error of law or was "clearly erroneous" in finding the facts. There was no error.

The Tax Court held that the taxpayer did not satisfy the burden of proving the tables inapplicable. First, the Tax Court rejected the taxpayer's contention that the past return of the trust was 8.2%, a figure well above the implicit return of 3½% then used in the tables. The 8.2% figure was arrived at by valuing the trust as of April 15, 1952, the date of Andrew Christ's death. The correct valuation date, however, was September 30, 1953, the date of the distribution to the trust and the date Daisy's election became irrevocable. Using the correct date, the gross yield for 1953 was 6.18%, and for the period 1948–1953 was 5.48%.

The second reason the Tax Court held that the taxpayer did not satisfy his burden was that the figures produced by the taxpayer were based on the gross income of the trust, while the relevant figure was the net income available to Daisy. Thus the court was left to speculate whether the net income of the trust would substantially exceed the yields given in the tables.

Third, the Tax Court held that the past income of the trust could not be expected to continue at a fixed rate because the trust assets might be changed. The Tax Court noted that one large block of stock in a closely held corporation had no ready market value, but ignored this because the trustee intended to and did exchange the stock for listed stock in a tax-free exchange. The Tax Court also noted that the trustee, Daisy's son, was the sole remainderman of the trust. The Tax Court believed that, while not a controlling factor, one evaluating the trust might well consider whether the trustee in this situation would be likely to favor the remainder at the expense of the income recipient.

It is to these last-mentioned considerations, those of uncertainty, that the parties devote most of their argument. Both sides seek to have this court enunciate a hard and fast rule to apply in all such cases. The taxpayer argues as if the Tax Court's third rationale were the only basis for the decision. "Normal" uncertainty, the taxpayer urges, should be ignored. At the very least, it is argued, ordinary uncertainty should never be used to force a value based upon an anticipated yield below that which the trust had once earned. The government, too, urges an absolute rule. Citing many cases, none of which supports its proposition, the government urges that "the * * * [tables] may not be disregarded unless their use is highly unreasonable under the circumstances." A mere difference in anticipated yield, it argues, is never enough to meet this standard. The government would also have this court adopt an absolute rule that whenever the investments of the trust are subject to change the tables should apply. We decline to accept the invitations of the parties.

The government's argument that use of the tables fosters certainty is attractive, but the government itself is the party best able to create certainty in this area. Clarification of the conflicting regulations (*compare* Treas.Reg. § 20.-2031–1(b) *with* Treas.Reg. § 20.2031–7) and government abstention from arguing for different standards in different cases depending upon the short-run effect upon the revenue (*see* Rosen v. Commissioner, 397 F.2d 245 (4th Cir. 1968); Hipp v. United States, 215 F.Supp. 222 (W.D. S.C.1962)) would be helpful.

The arguments of both sides not only slight most of the bases for the Tax Court's decision, but ignore the ambiguous nature of an unusually high return from trust assets. A high return may reflect good luck, or it may reflect a deliberate policy to favor current income over capital growth. To the extent that a high return reflects the former, it may not necessarily be expected to continue over the long term; to the extent that it reflects the latter it may indeed be expected to continue. The effect of uncertainty is thus a question of fact; it would be improper to establish an abso-

lute rule either denying any weight to uncertainty or assigning it controlling importance.

■ The Tax Court was not in error in holding that the Commissioner's tables should apply, based on the factors listed in its opinion.

■ The taxpayer also urges that, based on the "uncontradicted" testimony of his expert, the tables should not have been applied to value a life estate in a dwelling house that became a trust asset. The Tax Court rejected the testimony of the expert because the expert was not qualified with respect to the property in question at the relevant times. (He claimed some familiarity with the property, as broker or appraiser, after 1960 or 1961.) The Tax Court was free to decide what weight if any, to give the expert's testimony.

The life expectancy as well as the yield assumptions of the Commissioner's tables were attacked, but the taxpayer presented none of the expert actuarial testimony that would be necessary successfully to attack old or outmoded tables. Miami Beach First National Bank v. United States, 443 F.2d 116, 119 (5th Cir. 1971); Dunigan v. United States, 434 F.2d 892 (5th Cir. 1970).

The taxpayer also argues that the right of Mrs. Christ to draw upon the principal of the trust, if necessary for her support, had value not properly recognized. The taxpayer also argues that the value of certain sums Mrs. Christ received from her husband's estate during its administration should have been included in computing the total value of the rights she received when she made her election. The effect upon over-all value of the trust interest of the value of support rights was never presented to the Tax Court, and is not timely here. The amount received during the administration of the estate was to be determined by a computation under Rule 50 in the Tax Court, but the taxpayer never submitted the requested computation. We are not persuaded that the interests

of justice require us at this late date to allow the taxpayer to reopen the case here to raise either of these issues.

Affirmed.