ESTATE of Isabelle M. SPARLING,
Deceased.

CROCKER CITIZENS NATIONAL
BANK, Trustee, Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 75–1808.

United States Court of Appeals,
Ninth Circuit.

May 2, 1977.

Jonathan S. Cohen, argued, Atty., Tax Division, U. S. Dept. of Justice, Myron C. Baum, Gilbert E. Andrews, Chief, Washington, D. C., for appellant.

Alton G. Harmon, argued, Pasadena, Cal., for appellee.

Before TRASK and ANDERSON, Circuit Judges, and TAKASUGI,* District Judge.

TAKASUGI, District Judge:

The Commissioner of Internal Revenue appeals from a portion of a decision of the United States Tax Court allowing the Estate of Isabelle M. Sparling a credit against tax under § 2013 of the Internal Revenue Code of 1954,[1] 26 U.S.C. § 2013. The opinion of the Tax Court is reported at 60 T.C. 330. This Court has jurisdiction under 26 U.S.C. § 7482.

The facts leading to this appeal are not in dispute. Isabelle Sparling and her husband, Raymond, were residents of California. Mr. Sparling died testate on February 5, 1956. When her husband died, Mrs. Spar-

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. Section 2013 provides in pertinent part as follows:

"§ 2013. *Credit for tax on prior transfers.*
"(a) *General rule.*—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a 'transferor') who died within 10 years before, or within 2 years after, the decedent's death.

\* \* \* \* \* \*

"(d) *Valuation of property transferred.* —The value of the property transferred to the decedent shall be the value used for the purposes of determining the Federal estate tax liability of the estate of the transferor but—

\* \* \* \* \* \*

"(2) where such property is encumbered in any manner, or where the decedent incurs any obligation imposed by the transferor with respect to such property, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to the decedent of such property was being determined; . . ."

ling was put to an election under his will, either to claim and keep her share of the community property to which she was entitled under California law, or to take under the will and permit its terms to govern the disposition of her community interest.

The will provided for a testamentary trust, the corpus of which was to include, upon the election of Mrs. Sparling, all the community property owned by them. Mrs. Sparling was to be the principal income beneficiary of the trust during her lifetime, and, upon her death, the corpus was to be divided among Mr. Sparling's two children, and Mrs. Sparling's daughter whom Mr. Sparling had adopted. If Mrs. Sparling chose to take her community share instead of allowing it to pass into the testamentary trust, the will excluded her from any benefits under the trust. Mrs. Sparling did elect to take under the will, and she waived all claims to her share of the community property.

At the date of the trust's creation, the total value of the corpus, which was made up wholly of community property, was $253,932.[2] Mrs. Sparling's contribution, 57.4262% of the total,[3] was $145,823. The value of her life estate in her husband's contribution to the trust was $29,589; the value of her remainder interest in her own contribution, after her reserved life estate, was $105,911. Thus, to receive a life interest worth $29,589, Mrs. Sparling was required to surrender property to the trust in the amount of $105,911.

Mrs. Sparling died December 17, 1965. At her death the trust terminated and the corpus was distributed to the remaindermen designated in her husband's will.

The value of the trust corpus on the date of Mrs. Sparling's death, as well as the alternate valuation date, was $266,166. The value of the portion of the trust corpus attributable to Mrs. Sparling was $152,849 (57.4262% of the total value). Thus, the Tax Court held that $152,849, less $29,589 (the value of the life estate she had received as consideration for making the transfer), or $123,259, was includable in her gross estate under § 2036 of the Code[4] (relating to transfers with retained life estate) and § 2043[5] (relating to transfers for insufficient consideration). The Tax Court also concluded that when Mrs. Sparling relinquished her share of the community property to the trust, she made a gift to the remaindermen of her contribution to the trust ($145,823), less the value of the life estate she retained in the property ($39,911), and less also the value of the consideration she received for the transfer ($29,589).[6] This resulted in a taxable gift

---

2. The amounts stated throughout are rounded to the nearest dollar.

3. The estate and inheritance taxes attributable to the husband's community property were taken out of his share, making Mrs. Sparling's contribution proportionately larger.

4. Internal Revenue Code of 1954, § 2036, 26 U.S.C. § 2036. The pertinent provisions are § 2036(a)(1):

"(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property".

5. Internal Revenue Code of 1954, § 2043, 26 U.S.C. § 2043. Section 2043(a) provides as follows:

"(a) In general.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent."

6. Internal Revenue Code of 1954, § 2512(b), 26 U.S.C. § 2512(b), provides that:

"(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be

to the remaindermen of $76,322. Mrs. Sparling's estate has been allowed an appropriate credit for gift tax, and no appeal has been taken from these determinations of the Tax Court.[7]

The single question on this appeal is whether the estate of Isabelle M. Sparling is entitled to a credit for the estate taxes paid by her husband's estate attributable to the life estate she received under the will. The Commissioner of Internal Revenue disallowed the claimed credit, but the Tax Court reversed the Commissioner's determination and allowed the credit. For reasons stated below, we hold that the Tax Court erred in allowing the disputed credit.

## I

█ Section 2013 of the Internal Revenue Code of 1954 provides that a decedent's estate is entitled to a tax credit for the federal estate tax paid with respect to property transferred to the decedent from a person who died within ten years before, or within two years after, the death of the decedent. The section was enacted to "prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period". Sen. Rep.No. 1622, 83rd Cong., 2d Sess. 121 (1954), 3 U.S.Code Cong. & Admin.News, 1954, pp. 4629, 4755. Subject to certain adjustments and limitations, the tax credit is the amount which bears the same ratio to the total estate tax paid by the transferor as the value of the property transferred bears to the total value of the transferor's taxable estate. If the transferred property has no value, the credit will, therefore, be zero. The percentage of credit allowed to the transferee's estate decreases ratably over the ten-year period.

█ The credit applies to any beneficial interest in property received by the transferee. Section 2013(e). Thus, a life estate held by the decedent-transferee may qualify for the credit, even though the life estate will not be included in his estate and, therefore, cannot itself be the subject of double taxation.[8] See Treas.Reg. §§ 20.2013–1(a) and 20.2013–5(a).

Under her election to take a life estate in her husband's community property, Mrs. Sparling was required to contribute property of greater value to the trust for the benefit of the remaindermen. This raises the issue of whether a decedent's estate is entitled to a "credit for tax on prior transfers" under § 2013 where the transfer of property to the decedent is conditioned upon her conveying property of equal or greater value to another.

The Government argues, first, that Mrs. Sparling's life estate in her husband's community interest was procured by "purchase". It contends that a life estate (or any other property interest) "purchased" by a decedent, and not received through gift, devise, or inheritance from a prior decedent, is not property to which § 2013 credit applies. Next, the Government argues that, for purposes of computing the allowable credit, the value of the property passing to the decedent must be reduced by the amount of the remainder interest Mrs. Sparling was required to give up in order to obtain it. Following this approach, since Mrs. Sparling received no net benefit from the exercise of her election, the value of the transferred property is reduced to zero. Her estate is therefore, entitled to no credit with respect to the life estate.

█ We agree that Mrs. Sparling's acquisition of the life estate in her husband's

---

deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

**7.** For a capsule discussion of the federal tax consequences created by a widow's election, see *Estate of Christ v. Commissioner of Internal Revenue,* 480 F.2d 171 (9th Cir. 1973).

**8.** The congressional rationale for permitting a credit for terminable interests appeared to be

that the terminable interest may produce income that might be taxable in the life tenant's estate. Sen.Rep.No. 1622, supra, at p. 122. Another possible rationale is that possession of the life estate may enable the life tenant to conserve other assets which otherwise he would have expended, and which subsequently are included in his gross estate. See Kirby, Proposed Estate Tax Regulations, 96 Trusts and Estates 12 (1957).

community property should be described as a "purchase". It has been held in this circuit, under facts virtually identical to these here, that where a widow received a life estate in her husband's community property on condition that she relinquish a portion of her own community interest, she takes such life estate by purchase and not by gift, bequest, or inheritance. *Gist v. United States*, 423 F.2d 1118, 1120 (9th Cir. 1970); *Estate of Christ v. Commissioner of Internal Revenue*, 480 F.2d 171 (9th Cir. 1973). Labelling this transaction as a "purchase" does not immediately dispose of the issue, however. The question remains whether "purchases" are excluded from the operation of § 2013 of the Code.

## II

Our review convinces us that property acquired by "purchase" from a prior decedent does not qualify for § 2013 credit.

We begin by examining the statute itself. Section 2013 does not specifically exclude from its operation property acquired by purchase. Unlike its predecessor, § 812(c) of the Internal Revenue Code of 1939, it does not contain the restrictive language requiring that property must have been received through "gift, devise, bequest or inheritance" from the prior decedent. The statutory language of § 2013 refers to the "transfer of property", a term which is broad enough to include "purchases". We do not stop here, however. A basic and critical consideration is the value of the interest passing to the decedent. For purposes of § 2013, the value of the transferred property is the value at which it was included in the transferor's estate, reduced by certain items. Only one of these is relevant here. Subsection (d) of § 2013 deals with the question of valuation:

"(d) Valuation of property transferred.— The value of property transferred to the decedent shall be the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor but—
\* \* \* \* \* \*

"(2) where such property is encumbered in any manner, or where the decedent incurs any obligation imposed by the transferor with respect to such property, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to the decedent of such property was being determined".

The disputed credit depends upon the interpretation of the phrase "any obligation imposed by the transferor with respect to such property," and the concluding provision that "such . . . obligation shall be taken into account in the same manner as if the amount of a gift to the decedent of such property was being determined".

The Tax Court in allowing the disputed credit, properly recognized that § 2013 requires the value of the previously taxed property to be reduced by obligations incurred by the decedent in obtaining the property. Yet, it reasoned that such reduction applied only to property the decedent was obligated to transfer out of her estate, so that it would not be subject to the federal estate tax upon her death. Because the remainder interest transferred by Mrs. Sparling was includable in her estate by virtue of § 2013 of the Code,[9] the Tax Court concluded that she had incurred no obligation within the meaning of § 2013. 60 T.C., at 346.

We disagree with the Tax Court's analysis of the law. Under California Civil Code, § 161a, Mrs. Sparling had a "present existing and equal interest" in the community property before the death of her husband. By accepting the bequest, she fully relinquished her right to the remainder interest in her one-half share of the community property. She relinquished that interest as a condition to receiving a life estate in her husband's one-half interest in the community property. Under these circumstances, Mrs. Sparling's relinquishment of her remainder interest was an "obligation imposed by the transferor [husband] with respect to the [life estate]."

9. See footnote 5 *supra*.

To arrive at the value of the property passing to the decedent, § 2013(d)(2) provides that "such . . . obligation shall be taken into account [as if] a gift to the decedent" were being made. This provision demonstrates an intent to provide a credit for the estate taxes paid on gifts *to the decedent.* In this case, the widow's election resulted not in a gift to the decedent widow, but a gift to the children of the couple. The widow in fact had no net benefit from the bequest. We believe that the proper construction of § 2013(d)(2) is that the value of property is determined on the basis of the net value or the net gift to the transferee at the date the transfer was made. Although § 2013(d)(2) is not phrased in terms of a "net gift" or "net value", the operation of the language reaches that result.

Upon this interpretation, it is evident that subsection (d)(2) operates to exclude "purchases" from the coverage of § 2013. If the decedent, as in this case, purchases an interest from the prior decedent or gives valuable consideration for that interest, no gift has been made to the extent of the consideration. See *Estate of Christ v. Commissioner of Internal Revenue, supra.* To the extent of the consideration given, no credit is available.

This interpretation is supported by clear expressions of legislative intent. The Report of the Senate Finance Committee, discussing the operation of § 2013(d), states that the value of the property transferred is determined:

". . . as if the value of a gift . . of such property at the death of the transferor were being made, taking into account all encumbrances or obligations. . . . [For example,] [i]f the transferor bequeaths certain property to the decedent subject . . . to his agreement, or a charge on the property, for payment of $1,000 to X, the value of the bequest is the value of the property reduced by $1,000." Sen.Rep.No.1622, *supra,* at 467, 3 U.S.Code Cong. & Admin.News, *supra,* at 5111.

The pertinent Treasury Regulations follow closely the approach expressed in the Senate Report and thus are accurate manifestations of congressional intent. See Treas.Reg. § 20.2013–4(b)(3). An example of the kind of testamentary disposition involved in this case is provided in the Regulations:

"The transferor bequeaths certain property to his wife, the decedent, in lieu of her interest in property held by them as community property under the law of the State of their residence. The wife elected to relinquish her community property interest and to take the bequest. The value of the property transferred to the decedent is the value of the property reduced by the value of the community property interest relinquished by the wife." Treas.Reg. § 20.2013–4(b)(3)(iii) Example (3).

The Tax Court found this example readily distinguishable from this case. The example above does not account for a transfer of community property subject to a retained interest that would bring into effect § 2036. Here, the widow's election brought into play § 2036 so that the community property relinquished was included in the decedent wife's estate. The Tax Court concluded that "when the effect of Section 2035 is to include that very same property in the wife's estate, we cannot say that for purposes of the credit that she has properly relinquished her interest." 60 T.C. at 346.

Neither the statutory language nor the legislative history supports this conclusion. The Tax Court's construction of an "obligation" under § 2013 as requiring a transfer of property out of the transferor-decedent's estate is not compelled by a literal interpretation of the statutory language. Further, the Tax Court disregarded the direction of § 2013(d)(2) that where a transfer of property is made subject to an obligation imposed by the transferor, it is to be treated as a disposition of a gift to the decedent of such property. The Court looked instead to the effect of the transfer on the estate tax liability of the transferee. We hold this

was error. But even under the Tax Court's construction, we find that the credit was not allowable. Although the value of the remainder interest transferred by Mrs. Sparling was includable in her estate by virtue of § 2036, the amount included was reduced, in accordance with § 2043, by the value of the consideration she received for making the transfer, that is, by the amount attributable to the purchase price.[10] ($105,-911 minus $29,589.) Thus, Mrs. Sparling transferred property out of her estate equal in value to the property she received. Under this computation, no credit was allowable either.

A decision of the Supreme Court in an analogous case further supports our interpretation of § 2013(d). In *United States v. Stapf*, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), the Supreme Court dealt with a widow's election in the context of the marital deduction under § 812(e) of the Internal Revenue Code of 1939.[11] In interpreting § 812(e), the Court determined that the statutory language, virtually identical to that of § 2013(d)(2) of the present Code,[12] meant the "net economic interest" received by the surviving spouse. The Court concluded that "for *estate tax purposes*, the value *of a conditional bequest to a widow* should be the *value* of the property given to her *less* the value of the property she is required to give to another." *Id.* at 129, 84 S.Ct. at 256. (Emphasis added.)

We believe this principle has equal application here. Congress has expressly indicated its intent "that the value of property transferred to the decedent shall be determined in the same manner as the value of property interests passing to a surviving spouse under section 2056 is determined [for purposes of the marital deduction]." Sen. Rep.No.1622, *supra*, at 467, 3 U.S.Code Cong. & Admin.News, *supra*, at 5111. Section 2056 of the Internal Revenue Code of 1954 did not change the prior law under § 812(e) of the 1939 Code relating to the computation of the value of property passing from a decedent to his spouse. *Id.* at 474, 5118.

 We conclude, based upon our reading of the statutory language, the authoritative declarations of congressional intent, and the Supreme Court's decision in *Stapf*, *supra*, that for purposes of § 2013, credit is allowable only to the extent that the property given to the decedent exceeds in value the property the decedent is obligated to give up. In this case the value of the property Mrs. Sparling received ($29,589) must be reduced by the value of the remainder interest she was required to relinquish ($105,911). Since she received no net value, her estate is entitled to no credit.

Our holding with respect to this issue is consistent with the purpose of § 2013, which is to avoid oppressive successive taxation of the same property. Since the community interest given up was more valuable than the bequest received, it seems clear that the widow in effect received nothing from her husband through the exercise of her election; there was nothing in her estate resulting from that election that could be the subject of double taxation.

The judgment of the Tax Court is reversed and the case remanded for proceedings consistent with this opinion.

\* \* \* \* \* \*

"(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined."

---

10. See footnotes 5 and 6 *supra*.

11. Now Internal Revenue Code of 1954, § 2056, 26 U.S.C. § 2056.

12. Internal Revenue Code of 1939, § 812(e)(1)(E) provided:

"(E) *Valuation of interest passing to surviving spouse.* In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—