136 N.W.2d 823 (1965)
In the Matter of the ESTATE of Brit TONNESON, Deceased.
Helen K. EDWARDS et al., Petitioners and Appellants,
v.
Albert CHRISTENSON, executor of the Last Will and Testament of Brit Tonneson, deceased, et al., Respondents.
No. 8132.
Supreme Court of North Dakota.
August 31, 1965.
*824 Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for petitioners and appellants.
Duffy & Haugland, Devils Lake, for respondents.
STRUTZ, Judge.
This action involves the intepretation of the will of Brit Tonneson. The appellants, in July of 1961, petitioned the county court of Bottineau County for an order directing that the Last Will and Testament of Brit Tonneson be interpreted as contended for by them; directing the executor of the estate to show cause why the partial distribution which had been made under the will in May of 1952 should not be set aside and declared to be illegal, null and void, and of no effect; and, further, ordering that the executor be charged with the full amount which the petitioners contend was illegally distributed by him, with interest, and that such order require a final accounting and distribution to persons legally entitled thereto under the will.
The executor filed a written objection to the petition and stated that the county *825 court had placed its construction on the provisions of the will when it was admitted to probate; that partial distribution had been made under the will as construed by the court; that the objections to the construction of the will by the county court therefore were not timely; and that the petitioners were guilty of laches and were bound by the distribution as made by the executor.
The county court of Bottineau County heard the petition on September 5, 1961, and, after hearing, entered its order dismissing the petition on the ground that the executor had followed the provisions of the will and made distribution according to such provisions. The petitioners thereupon appealed to the district court from the order denying the petitioners' construction of the last will and testament as contended for by them and, further, denying the petitioners' demand to have the partial distribution made by the executor declared illegal and invalid.
At a pretrial conference, the parties stipulated that the issues raised by the petition of the appellants be submitted to the district court upon the files and records of the county court, and that the respondents, subject to the objection of the petitioners on grounds of immateriality, be permitted to introduce and file in the case all of the correspondence which the executor may have had with the petitioners respecting their receipt of their distributive shares of the estate and their reaction to the handling of the estate.
The respondents filed an affidavit by the attorney who drew the will and by the executor who was present in the attorney's office when the testatrix gave the attorney her instructions for preparing the will, which affidavits were to the effect that the testatrix had advised the attorney that she wanted her deceased husband's brothers to share in her estate the same as her own brother and sisters, all of whom were dead at the time of drawing the will; and that she wanted the children of her deceased brother and sisters to receive the share which their father or mothers would have received had they been living. The affidavit of the attorney further stated that, on May 9, 1952, distribution was made to the various beneficiaries under the will as interpreted by the county court, which interpretation was that the deceased husband's brothers were to share in the estate on the same basis as the children of testatrix's deceased sisters and her deceased brother, and that each of the children of her deceased sisters and of her deceased brother were advised of this construction on the provisions of the will; that a check was sent to each which was based on such construction and that each child of the deceased sisters and deceased brother of testatrix were required to sign and return a receipt for such payment so arrived at; that each of the beneficiaries, including all of the petitioners, received and cashed the check and that each signed a receipt for the money received based on such construction of the will; that the payments so made were set out in the executor's annual report thereafter filed with the county court; that due notice of hearing on such annual report was given to all of the parties, including the petitioners herein; and that no objections were made to the annual report and it was approved by the county court on May 29, 1952.
On the record thus made, the respondents moved for summary judgment. The petitioners filed a return to such motion, agreeing that if the claims and conclusions set forth in the affidavits were admitted in evidence, the persons who signed each affidavit would testify to facts as stated therein; that the petitioners, however, contend that such evidence is inadmissible under the law. The petitioners, on their part, then made a motion for summary judgment in their own favor on the ground that the petition, the written objection of the respondents, the stipulation of the parties, and all of the records and files in the proceedings show that the petitioners are entitled to summary judgment in their favor, that the respondents *826 have no defense to the claims of the petitioners, and that the only proper construction of the Last Will and Testament of Brit Tonneson is as contended for by the petitioners.
The trial court ordered summary judgment to be entered for the respondents, affirming the judgment of the county court of Bottineau County. From this summary judgment the plaintiffs have taken this appeal.
The facts in this case are not materially in dispute. It appears from the record that Brit Tonneson died September 23, 1951, leaving a will which thereafter was admitted to probate in the county court of Bottineau County. This will contained the following provisions:
"Second: I give, devise and bequeath to my beloved relations as follows: Jonas Tonneson, Tonnes Barentson, Peter Barentson; to the children of my beloved deceased sister, Guro Halgrimson, Dordi Isakson, Dorothea Knudson, and to the children of my beloved brother, now deceased, Ole Mauseth, all the property I now possess. It is my desire that all my above named relations get an equal portion of my estate and that they all be treated equally.
"Third: Both my deceased husband and I have relations in Norway, but it is my desire that no one take anything under this Will, save and except the children of my beloved sisters and my brother herein named.
"LASTLY I hereby constitute and appoint Albert Christianson of Newburg, North Dakota, the executor of this, MY LAST WILL AND TESTAMENT, knowing that he will be fair and honest with all concerned and do justice to everyone."
In deciding the question raised on this appeal, we must carefully examine the provisions of the above will and determine whether they should be construed as contended for by the petitioners. Are these provisions clear and unambiguous, as contended by the petitioners, or do they contain latent ambiguities permitting the court to consider extrinsic evidence? Certain rules of construction should be kept in mind in considering these matters.
The court has the power to interpret and to construe provisions of a will, but it may not make or rewrite the will of the testatrix or change its provisions by construction, even to do equity. If the intent of the testatrix is expressed in clear, definite, and unambiguous language, no judicial construction or interpretation will be permitted. 95 C.J.S. Wills § 586, p. 709.
The basic rule of construction of a will is to give effect to the intention of the testatrix. Our law provides that,
"A will is to be construed according to the intention of the testator. * * *" Sec. 56-05-01, N.D.C.C.
The intent of the testator, which controls in the construction of a will, is that which appears either expressly or by necessary implication from the language of the will. In re Glavkee's Estate, 76 N.D. 171, 34 N.W.2d 300.
Where, from the language of a will, there is no doubt as to the intent of the testatrix to dispose of her property, but there is a latent ambiguity as to the identity of the beneficiaries, extrinsic evidence is permissible to remove such ambiguity. In re Nystuen's Estate (N.D.), 80 N.W.2d 671.
Thus the power of the court is limited to construing the language used by the testatrix in this case and in determining the intent of the testatrix in any provision which may be ambiguous. We may not, however, rewrite the will under the pretense of construing it, even to do equity.
*827 Reading the second and third paragraphs of the will before us, the first question to be answered by us is: Are these provisions so clear and unambiguous so that only one interpretation can be given to them? If that is true, the court cannot interpret these provisions of the will for, where the intent of the maker of the will is expressed in clear, unambiguous language, there is no need for judicial interpretation. An ambiguous provision, on the other hand, means simply that there are two constructions or interpretations which may be given to a provision of a will and that it may be understood in more senses than one. If there is uncertainty or ambiguity, it is proper for the court to resort to or to take into consideration established rules for the construction of a will.
The second paragraph of the will gives to the persons named therein "all the property I now possess. It is my desire that all my above named relations get an equal portion of my estate and that they all be treated equally." The petitioners contend that this provision is clear and that it was the intent of the testatrix to give to Jonas Tonneson, Tonnes Berentson, Peder Berentson, and to each of the children of her three deceased sisters and her deceased brother equal shares of her estate. Respondents, on the other hand, contend that this provision simply means that the three named brothers of her deceased husband and the children of each of her deceased sisters and her deceased brother, whom she names, are to share equally; that is, the children of each deceased sister and the children of her deceased brother are to receive the share which such deceased sister or brother would have taken had she or he been alive. This is the interpretation given to this provision by the county court and the interpretation adopted by the district court.
The will provides: "It is my desire that all my above named relations get an equal portion of my estate and that they all be treated equally." Testatrix names only her husband's brothers and her own deceased sisters and brother. She does not name the children of her deceased sisters and brother. By referring to her "above named relations" and expressing a desire that they get an equal portion of her estate and be treated equally, did she mean the relations she specifically names, or did she intend to include those referred to, such as the children of her deceased sisters and brother? Surely it cannot be contended that this language is definite, clear, and unambiguous, and that only one interpretation can be given to it. Good arguments can be made for either position, which is proof that the designation is ambiguous. It would have been an easy matter for the scrivener to have expressed the intent of the testatrix in clear, definite, and unambiguous language. The language which was used, however, is not clear, definite, and unambiguous. In such case extrinsic evidence is permissible to remove the ambiguity.
It is fundamental that parole, extrinsic, or collateral evidence will not be permitted to add to or vary the provisions of a will because the court cannot, with the aid of such outside evidence, make a will for the testatrix. While the testimony of the attorney who prepared the will, as to declarations by the testatrix with respect to her intentions, is generally inadmissible to establish such intentions, where the intentions are not apparent from the will itself, the testimony of the attorney as to the testatrix's declarations or instructions has been held to be admissible to clear up any ambiguity as to the beneficiaries under the will. Therefore, where the beneficiaries under the will are not designated clearly or with precision, parole evidence generally is admissible to aid the court in identifying such beneficiaries. In re Nunes' Estate, 123 Cal.App.2d 150, 266 P.2d 574, involved a will that contained latent ambiguities as to the identity of beneficiaries, and the court permitted oral declarations of the testator made to the drafter of the will *828 to be admitted in evidence to prove intent as to the intended beneficiaries.
Where a testator made a bequest to "Meadville Firemen's Relief Association," and there were two organizations with names similar to that found in the will, both claimed the legacy. Each of the two organizations had names which partially fitted the words used in designating the legatee, but neither with the exact name as that of the beneficiary. The court held that the testimony of the attorney who drafted the will was admissible to show that the testator in a prior will had made a similar bequest and that at the time of the execution of the prior will there was only one of these organizations in existence, and that thus the older of the two organizations must have been intended. In re Williamson's Estate, 161 Pa.Super. 106, 53 A.2d 869.
In the case of In re Craig's Estate, 64 Cal.App.2d 132, 148 P.2d 100, the California court had before it a will in which the testator left a bequest to "children or child living at the time of my death" of a certain person named in the will. It appeared that there were no sons or daughters of such person living, either at the time of the death of the testator or at the time of making the will. The court held that the provisions were ambiguous, and permitted extrinsic evidence to show that the testator intended to include grandchildren in using the word "children."
In examining the will of the deceased Brit Tonneson, we find that the second and third paragraphs of such will are subject to more than one interpretation or construction. Under the second paragraph of the will, the property is left to certain beneficiaries, including "Jonas Tonneson, Tonnes Barentson [Berentson], Peter Barentson [Peder Berentson]; to the children of my beloved sister, Guro Halgrimson, Dordi Isakson [Isackson], Dorothea Knudson and to the children of my beloved brother, now deceased, Ole Mauseth." Are Dordi Isackson and Dorothea Knudson children of her sister Guro? We know that they are not, but that fact is not clear from reading this paragraph. We would further point out that, under the third paragraph of the will, testatrix states: "It is my desire that no one take anything under this will, save and except the children of my beloved sisters and brother herein named." Clearly, if the third paragraph is given the construction indicated, Jonas, Tonnes, and Peder, named in the second paragraph, would take nothing. And yet they have been specifically provided for in the earlier paragraph.
We hold, therefore, that a latent ambiguity exists in the designation of the beneficiaries which may be resolved by extrinsic evidence. On the theory of ambiguity, evidence of the attorney who drew the will and of the executor, who was present when instructions for drawing the will were given by the testatrix, is admissible to ascertain the testatrix's intentions and to establish the identity of the beneficiaries. From such evidence it is found that the purpose and intent of the testatrix was to leave her estate to the brothers of her deceased husband named in the will and to the children of her deceased sisters and brother, per stirpes.
For reasons stated herein, the judgment of the district court is affirmed.
BURKE, C. J., and ERICKSTAD and TEIGEN, JJ., concur.
KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.