Minnie **DOUGHTY**, **Robert Harris, Alfred D. Grandchamp** and **Paul Moran,** Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. 1637.

United States District Court
D. Montana,
Helena Division.

Feb. 27, 1969.

Meloy & Kline, Helena, Mont., for plaintiff, Minnie Doughty.

Doepker & Hennessey, Butte, Mont., and Harold L. Allen, Three Forks, Mont., for plaintiffs, Robert Harris and Alfred D. Grandchamp.

Berg, O'Connell & Angel, Bozeman, Mont., for Paul Moran, plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., Mitchell Rogovin, Asst. Atty. Gen., Gerome Fink, Harold S. Larsen, James P. Barker, Attys., Dept. of Justice, Washington, D. C., for defendant.

## ORDER AND OPINION

RUSSELL E. SMITH, Chief Judge.

In this action for a tax refund the parties have, by a stipulation which contains the agreed facts, submitted two issues to the Court.

### I.

Whether the Court has jurisdiction to consider the claim of a person who did not, prior to the commencement of this action, file a claim for refund with the Internal Revenue Service.

 The plaintiffs are assignees of a right to recover a claimed overpayment in federal estate tax. Three of the assignees filed timely claims for refund for their portion of the claim. The fourth, Paul Moran, did not file a claim. In the absence of a claim he may not maintain this action,[1] and it is ordered that the plaintiff, Paul Moran, be denied all relief.

### II.

Whether the Commissioner of Internal Revenue erred in determining the size of the marital deduction to which the estate was entitled.

Alfred Doughty died in Montana leaving a will, amended by a codicil. His widow, Minnie Doughty, renounced the benefit of the provisions made for her by the will and codicil and elected to take her dower in decedent's land and her share of the personal estate.[2]

A petition for determination of heirship was filed by two beneficiaries under the will which alleged that a premarital agreement, between Minnie Doughty and her deceased husband,[3] prevented her from making an election to renounce under the will. The controversy thus generated resulted in a document entitled "Stipulation and Agreement of Settlement and Petition for Decree Determining Heirship and Interests in Estate" which was executed by the widow and all of the devisees and legatees under the will. The parties agree that the controversy was bona fide, that the negotiations were conducted at arms length and that the "settlement was a bona fide evaluation of the rights of Minnie Doughty."

Under the terms of the settlement Minnie Doughty received the property devised to her by the will, some additional money and property, and an agreement by three Charities named in the will (Inter-Mountain Deaconess Home for Children, Sisters of Charity of Leavenworth, Kansas, and The Montana Childrens' Home and Hospital), to pay to Minnie Doughty the sum of $300.00 per month during her life.

The problem is somewhat complicated by a sum of $100,000.00 which was to be paid to the Charities under a paragraph in the agreement which suggests somewhat ambiguously that the monthly payments should come out of the $100,-000.00:

"* * * SUBJECT HOWEVER to the following conditions, viz., that said Charities shall jointly and severally agree to pay to said Minnie Johnson Doughty the sum of Three Hundred Dollars ($300.00) per month, commencing on the last day of the first full month following the date of entry of the Decree so distributing said sum of $100,000.00 as above set forth, and

---

1. 26 U.S.C.A. § 7422.

2. Section 22-107, R.C.M.1947.

3. Nothing in this opinion is intended to comment upon the widow's rights created upon an election to renounce under a will or upon the effect of a premarital agreement upon those rights.

the sum of $300.00 on the last day of each month during the natural life of Minnie Johnson Doughty to and including the last day of the last full month preceding the date of her death."

A decree was entered pursuant to the stipulation. It contained an absolute obligation to pay $300.00 per month for life and did not limit the payments to a maximum of $100,000.00. The decree did not encumber the $100,000.00 in the hands of the Charities. An agreement which was executed by the Charities and Minnie Johnson Doughty followed the decree. While the stipulation may have been ambiguous, the decree and subsequent agreement make it certain that Minnie Doughty has an unsecured promise from the Charities to pay her $300.00 per month for life, no more, no less. The calculated value of this promise is $47,238.48 and the dispute arises out of the refusal of the Commissioner to allow that amount as a part of the marital deduction.

Plaintiffs concede that the annuity is terminable but urge that even terminable interests may qualify for the marital deduction if no part of the property passes to another person on the termination of the spouse's interest.[4] Plaintiffs claim that Minnie Doughty will exhaust the annuity and that no property will pass to another person on her death.

■ The marital deduction may be taken only as to interests in property which pass from the husband to the widow.[5] In a tax refund case involving a will, a renunciation, an agreement following arms length negotiations, and a decree incorporating the agreement, this court held that for marital deduction purposes the amounts provided for the widow in the decree can be regarded as passing to her from her deceased husband. (Stephens v. United States, 270 F.Supp. 968 (D.C.Mont. (1967)). In that case the widow received a fee in land and personal property which had been owned by the husband in his lifetime.

The *Stephens* case does not fit here because what Minnie Doughty received was a promise to pay which was not owned by her husband in his lifetime and which was not an asset of his estate.[6] If the inquiry were to stop at this point, then the plaintiffs would fail because that which the husband never owned could not pass from him to his widow.

■ If further inquiry be made and the promise to pay the annuity be treated

---

4. "(b) Limitation in the case of life estate or other terminable interest.—

(1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(B) if by reason of such passing *such person* (or his heirs or assigns) *may possess or enjoy any part of such property* after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B)—" (Italics supplied) 26 U.S.C.A. § 2056(b) (1) (A) and (B).

5. "(a) Allowance of marital deduction.— For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of *any interest in property which passes or has passed* from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." (Italics supplied) 26 U.S.C.A. § 2056(a).

6. This fact distinguishes the case from one in which a husband purchases an annuity for his wife during his lifetime and the value of the annuity is included in the gross estate.

as passing from the husband because property which did pass from the husband can be traced into the annuity, plaintiffs still fail. Under the latter theory no matter what quantum of property of the estate be traced into the promise, some of it could by reason of the early death of Minnie Doughty remain in the hands of the Charities.[7] It is the plaintiffs' position that since the obligation to pay is a general obligation of the Charities not specifically limited to the amount of $100,000.00, that it cannot be said that any part of the estate passes to the Charities on the death of the widow. If the argument does not run afoul of the requirement that the interest pass from the husband, it still fails because it ignores the real effect of what was done.[8] These people were bargaining with estate property— they were dividing the husband's estate. The Charities to assure themselves of some part of the estate property of which the widow's claim of statutory rights might have deprived them, promised to pay Minnie Doughty $300.00 per month for life. If Minnie Doughty dies before the husband's estate is exhausted, the Charities will have some part of that estate left, and it doesn't matter in terms of real economic effect whether in the meantime the Charities have paid Minnie out of the pocket in which the estate money is kept or out of some other pocket.

If the annuity be treated as passing from the husband, then the obligation of the Charities to pay it must be treated as having been imposed by the husband, and the distribution so treated is the exact equivalent of a case in which distribution follows a will which requires that as a condition of his bequest a legatee pay the widow a sum per month for life. Plaintiffs concede that had this distribution been provided by the will of the husband the marital deduction would fail because the property left after the payment to Minnie Doughty would pass to the Charities.

The conclusion reached is fortified by examining the problem in terms of basic marital deduction concepts. Thus it is said:

"'The basic principle * * * is that the spouse first to die shall be permitted to pass on to the surviving spouse free of estate tax up to one-half of his or her estate, provided only that the terms of the transfer are such that this property will be taxable in the estate of the surviving spouse.'" Dougherty v. United States, 292 F.2d 331, 337 (6 Cir. 1961).

See Estate of Schildkraut v. C.I.R., 368 F.2d 40 (2 Cir. 1966)

What is sought to be done here defeats that purpose. If a marital deduction of $47,238.48 is allowed, and if the widow dies after $20,000.00 has been paid to her, then the Charities are $27,238.48 richer because of the widow's early death. No estate tax will be paid in the husband's estate on that $27,238.48 and that amount will not be included in the wife's estate.[9]

The result reached here is not contrary to Indiana National Bank of Indianapolis v. United States, 191 F.Supp. 73 (S.D. Ind. 1961) relied upon by plaintiffs. There, as a result of the agreement, the widow received cash. With it she created a trust which created terminable interests in her. So far as the opinion

---

7. The contingency that a part of the property may pass to another is sufficient to defeat the exemption. (Meyer v. United States, 364 U.S. 410, 81 S.Ct. 210, 5 L.Ed.2d 161 (1960).

8. *Cf.* United States v. Stapf, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963).

9. It does not appear from the record here how the charitable deductions were calculated, and plaintiffs do not claim that since the part of the estate which might pass to another will pass to a charity that charitable deductions are involved and for that reason there should be some refund. The problem is therefore treated without regard to the charitable character of the beneficiary.

shows the widow was legally free to do whatever she saw fit with that cash.[10]

This opinion and the stipulation constitute the findings of fact and conclusions of law.

It is ordered that the plaintiffs be, and they are hereby, denied all relief.

10. The opinion says of a meeting held the day before the agreement was executed: "At this meeting it was stated that it was understood that J. Pearl Storer contemplated establishing a trust in the amount of $240,000, the income from which would go to The Oliver W. Storer Scholarship Foundation, with Mrs. Storer having the right to withdraw up to $25,000 of the principal in any one year."

It does not appear that the widow's "contemplation" of creating a trust ever resulted in a binding obligation upon the part of Mrs. Storer to establish a trust.