**Mary Louise Skene QUANDEE, Plaintiff and Appellant,**

v.

**George Wilson SKENE, Defendant and Appellee.**

**Civ. No. 10166.**

Supreme Court of North Dakota.

July 1, 1982.

On 6 July 1965 Elmer J. Skene (Elmer) and Minnie Skene (Minnie), husband and wife, executed a joint will devising and bequeathing to each other all of their property, real and personal, for the lifetime of the survivor, and, on the death of the survivor, devising certain real property to their only children, George and Mary. A residuary clause in the joint will provided the residue of the estate, after appraisal of the real estate, was to be distributed by the executor "in the proportions necessary to make the distribution as equal as possible." [1]

On 15 September 1967 Elmer executed a general power of attorney appointing George as his attorney-in-fact to manage his business and financial affairs. George apparently did not exercise the power until 1971 except to provide assistance in selling a house in Hannah, North Dakota.

On 1 January 1971 Minnie died and her estate, including the land described in the joint will, was passed to Elmer without restriction or limitation by final decree of the Cavalier County Court.

In December 1971 George informed Elmer that an attorney had advised George that Elmer's estate tax could be reduced if he (Elmer) made gifts of some of his assets during his lifetime. On 4 August 1972 Elmer personally signed individual checks for George, Marguerite Skene (George's wife), Mary, and W. B. Quandee (Mary's husband). The checks made out separately to George and Mary were for the amount of $18,000 each. The checks made out separately to Marguerite and W. B. Quandee were for the amount of $3,000 each. The record reflects that in 1973, 1975, and 1976 George wrote and signed checks through his power of attorney for Elmer making gifts to George and Mary and their respective spouses. The total amount of the gifts to George and his wife was $33,000, and the total amount of the gifts to Mary and her husband was $33,000.

Caldis & Arneson, Grand Forks, for plaintiff and appellant; argued by Gordon Caldis, Grand Forks.

Price & LaQua, Langdon, for defendant and appellee; argued by Robert Q. Price, Langdon.

SAND, Justice.

This is an appeal by the plaintiff, Mary Louise Skene Quandee (Mary), from a district court judgment entered after a bench trial which dismissed her complaint against the defendant, George Wilson Skene (George), her brother.

1. Two codicils to the joint will were subsequently executed. One was executed on 22 June 1966 by both Elmer and Minnie. The other was executed on 1 September 1977. However, these codicils did not change the provisions of the will material to our consideration of this appeal.

On 4 April 1978 Elmer died at a nursing home in New Rockford, North Dakota. George was the sole executor of his estate, and during probate proceedings Mary learned the real property devised to George by Elmer's and Minnie's joint will had an appraised value of $69,595.00 more than the appraised value of the land devised to her. Further, Mary learned that the gifts to George, herself, and their spouses, had depleted Elmer's assets so that there was no money left in Elmer's estate to equalize the distribution of assets which she believed was required by the residuary clause of the joint will.

Mary then instituted the present action seeking an accounting for all money and property received by George from Elmer's estate by gift, joint tenancy arrangement, or otherwise and that she recover the amount of the gifts received by George because the gifts allegedly were made by Elmer as a result of George's undue influence and advice. Mary further alleged that George knew the appraised value of the real property he received under the will was of greater value than that received by Mary, and that George unduly exercised his influence as attorney-in-fact to defeat the provisions of the residuary clause of the joint will and appropriate for his own funds money which would have passed to Mary through the residuary clause.

After a bench trial the district court entered judgment in which it held that the residuary clause referred to only the assets remaining in the estate after the distribution of the specific devises and that the gifts to George did not contravene the residuary clause. The district court also found that George had overcome any presumption of undue influence arising from the relationship between Elmer and himself. Mary appealed to this court.

Mary asserted that the joint will provided for an estate plan of Elmer and Minnie which was circumvented. She contended that equal treatment of herself and George was an integral part of the estate plan expressed in the joint will, and that George's actions during Elmer's lifetime and under a power of attorney, in essence, defeated the estate plan he was obligated to follow.

Mary asserted the joint will provided that after an appraisal of the bequested real property was made, the residue of the estate was to be divided in such a manner between her and George so the total bequest to each would be as nearly as possible equal in dollar value.

Our analysis of the issues raised by Mary requires us to initially consider her claim that George exercised undue influence over Elmer or that there was fraud or a violation of a fiduciary relationship.

The district court, in its memorandum opinion, found there was "neither undue influence exercised by George over Elmer nor was there fraud or violation of a fiduciary relationship," and further if a presumption of undue influence did exist, that presumption of undue influence was overcome by strong contrary evidence. The district court's conclusions of law provided:

"Any presumption of undue influence arising from the relationship of Principal and Agent, or Father and Son, between Elmer G. Skene and George Wilson Skene, has been overcome by the evidence before the Court."

Whether a particular determination is a finding of fact or conclusion of law is to be determined by the reviewing court, and labels used by the trial court are not conclusive. *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972). Fraud and undue influence are questions of fact to which the "clearly erroneous" standard of Rule 52(a), North Dakota Rules of Civil Procedure, applies. See, e.g., *Woodbury v. Pfliiger*, 309 N.W.2d 104 (N.D.1981). After applying Rule 52(a), N.D.R.Civ.P., to the findings of fact necessary to reach the conclusion in the instant case, we cannot say that the trial court's finding that there was no undue influence or fraud is clearly erroneous.

To resolve the issues raised by Mary, including the assertions of undue influence and fraud, we must examine the relevant portions of the joint will of Elmer and

Minnie. The joint will provides, in relevant part, as follows:

"—4—

"We give, devise and bequeath unto the survivor of us the whole of our estate, whether the same be real, personal or mixed property or wherever the same may be situated for his or her natural lifetime. In the event of our simultaneous death or as a result of the same accident or upon the death of the survivor of us, we then give, devise and bequeath to our beloved children as follows:

(A) To our beloved son, George Wilson Skene, we give, devise and bequeath the Southeast Quarter (SE ¼) and the East Half of the Southwest Quarter (E ½ SW ¼) Section Two (2), the Northeast Quarter (NE ¼) and the East Half of the Northwest Quarter (E ½ NW ¼) Section Eleven (11), All in Township One Hundred Sixty-three (163), Range Sixty-three (63). We also give to our beloved son, George Wilson Skene, all motor and shop tools which we may own at the time of our death.

(B) To our beloved daughter, Mary Louise Skene Quandee, we give, devise and bequeath the Southwest Quarter (SW ¼) Section Thirteen (13), Township One Hundred Sixty-three (163), Range Sixty-three (63), the West Half (W ½) of Section Seventeen (17) and the Southeast Quarter of the Southeast Quarter (SE ¼ SE ¼) Section Seven (7), Township One Hundred Sixty-three (163), Range Sixty-two (62), and our home in Hannah, North Dakota, and all contents therein.

(C) All the rest and residue of our property, we give, devise and bequeath to our beloved children in the following proportions:

It is our intention and direction that our property except for the undivided bequests, be divided as closely as possible to equal between our beloved children, George Wilson Skene and Mary Louise Skene Quandee and therefore we direct that the residue of our property upon the death of the survivor of us be distributed to our above referred to children after appraisal of the real estate in order that our executor may distribute the residue in the proportions necessary to make the distribution as equal as possible."

The court's purpose in construing a will is to ascertain the intention of the testator as it appears from a full and complete consideration of the will in light of the surrounding circumstances. *Hitz v. Estate of Magdalena Hitz*, 319 N.W.2d 137 (N.D. 1982); *McGuire v. Gaffney*, 314 N.W.2d 851 (N.D.1982). See NDCC § 30.1–09–03. It necessarily follows that in construing a will each word, clause, and provision of the instrument should, if possible, be given effect. 80 Am.Jur.2d *Wills* § 1135, p. 245. The above cited section of Am.Jur.2d provides as follows:

"In the construction of a will, effect should, if possible, be given to all words, clauses, and provisions of the instrument, if they are not inconsistent with each other or with the general intent of the whole will when taken as an entirety, and unless the court is satisfied that no special effect was intended to be given a particular word or phrase. It is presumed that every word is intended by the testator to have some meaning; and no word or clause in the will is to be rejected to which a reasonable effect can be given. Where two constructions are suggested, the one disregarding a word or clause of a will, and the other giving effect to the will as a whole, the latter must be adopted. No part of the instrument is to be discarded unless in conflict with some other part, in which case that part will be enforced which expresses the intention of the testator."

Where the language of a will is clear and unambiguous, the intent of the testator must be determined from the language of the will itself. *Graves v. First National Bank in Grand Forks*, 138 N.W.2d 584 (N.D.1965). A provision in a will is ambiguous when more than one construction or interpretation may be given to the provision and it may be understood in more

than one sense. *In re Tonneson's Estate*, 136 N.W.2d 823 (N.D.1965). Where language used in a will is unclear, indefinite and ambiguous, extrinsic evidence is permissible to remove the ambiguity. *Id.* However, the will may not be rewritten on the basis of extrinsic evidence of the testator's intent, and extrinsic evidence is admissible "only to show what the testator meant by what he said, not to show what he intended to say." *McGuire v. Gaffney*, 314 N.W.2d 851, 855 (N.D.1982).

Whether or not an ambiguity exists in the words of a will is a question of law for the court. *In re Estate of Johnson*, 214 N.W.2d 112 (N.D.1973).

With these concepts in mind we will determine what Elmer's and Minnie's joint will provided, particularly in the previously set out paragraph.

The joint will provided, in essence, that upon the death of the survivor (Elmer), George was to get the real property and tools described in paragraph 4(A), and Mary was to get the home in Hannah, North Dakota, and the real property described in paragraph 4(B). A comparison of the description of the real property contained in these two provisions and the real property described in the inventory and appraisement prepared after Elmer's death reflects all of Elmer's and Minnie's real property was bequeathed to George and Mary in paragraphs 4(A) and (B). No real property remained to be distributed pursuant to the residuary clause.

The residuary clause, in effect, dealt with the remaining personal property. The clause provides that it was Elmer's and Minnie's "intention . . . that [their] property except for the undivided bequests, be divided as closely as possible to equal" between George and Mary. The provisions of the will do not reflect that any undivided bequests were made by Elmer and Minnie. Consequently, we do not believe that phrase "except for the undivided bequests," within the context of the whole will, has any significance.

However, when each of the remaining words and phrases of paragraph 4(C) are read together, we believe the will is not ambiguous and can be given meaning. After stating the testators' intention, the will went on to provide that, after the death of the survivor, the residue of the property, after appraisal of the real estate, was to be distributed in proportions necessary to make the distribution as equal as possible. In order to give meaning to the phrase "after appraisal of the real estate" and within the testators' stated intention, we believe the residuary clause must be construed to read that the real property would be appraised, and after that appraisal the residual property would be used to equalize "as closely as possible" the total distribution to George and Mary.

However, we also believe that the phrases "as closely as possible to equal" and "as equal as possible" recognized that after an accounting of the residual property and appraisal of the real property, an exact equal distribution may not have been possible. These phrases recognize that unexpected expenses may arise during the lifetime of the survivor which would have depleted the residue. These expenses may relate to any number of contingencies such as health care and treatment. In connection with this, we do not believe the survivor under the joint will was required to maintain sufficient residue property so that the distribution was exactly equal. We do not believe the provisions of the will contemplate that Elmer live a frugal life in order to preserve the residue for his children. Neither the provisions of the will, nor the record before us, suggest otherwise. In this respect we believe Elmer under the joint will which contained no restriction or limitations, could use the money of the residue to lead his life as he saw fit, and after his death the money remaining in the residue was to be used, after appraisal of the real estate, to make the total distribution to each child as equal as possible.

This leads us to the question, what is the effect of a joint will? A joint will executed by two persons without an

agreement or contract is, in effect, a separate will of each and is generally revocable at any time by either one of the surviving testators. 79 Am.Jur.2d *Wills* § 762, p. 825; 1 Bowe-Parker: Page on Wills, § 11.9. But, if a joint will contains a contract between the testators an action may be brought to enforce a constructive trust resting upon the contract. *Estate of Maloney v. Carsten*, 381 N.E.2d 1263 (Ind.App.1978); *Cook v. Walsh*, 39 Or.App. 357, 591 P.2d 1201 (1979).

In *O'Connor v. Immele*, 77 N.D. 346, 43 N.W.2d 649 (1950), we said that the survivor of the parties to an agreement to make reciprocal wills may not repudiate it after accepting the benefits under the will. This is still the law. If there was a contract or an agreement between the testators both are bound by the agreement or contract, but if there was no agreement, then the will, as indicated by other authority, may be revoked by the surviving testator.

We believe the phrase "upon the death of the survivor of us, we then give, devise and bequeath to our beloved children" establishes there was at least an implied agreement between Elmer and Minnie not to revoke the joint will. See, *Estate of Maloney v. Carsten, supra.* We believe the implied agreement not to revoke the joint will deals with the specific devises of real property to George and Mary and to provide a distribution "as closely as possible to equal." However, we do not believe the implied agreement can be extended to require Elmer to conserve the residue so as to provide an exact equal total distribution between Mary and George.

The problems with the concept contended by Mary under the present joint will are numerous. As an illustration of what is missing, let us assume the initial devises of the real property were unequal and in order to carry out the "as equal [a distribution] as possible" the testators would have had to agree in the joint will not to use any of the residual property or money or to use it only in a limited sense, such as earnings or interest during their lifetime to make sure that sufficient property would be available to make the "as equal as possible" distribution. This, of course, was not done. Neither was such a condition placed upon the surviving testator. Furthermore, such a condition could produce some unwarranted hardships upon the surviving testator. A life estate in real property can easily be established in a will, but how is a life estate established regarding the use of money? True, regarding money the survivor could be limited to the earnings of interest, but in the absence of such a limitation, and the present joint will does not contain such a limitation, the survivor is not limited to the interest or earnings on the principal.

Consistent with our earlier discussion, we believe the intent of the testators was to provide "as equal [a distribution] as possible" and that the survivor would be able to use the residue as he or she saw fit during the survivor's lifetime.

Based on this, we believe it was not inconsistent with the joint will for Elmer to make full use of the residual property of the estate, including making inter vivos transfers in the form of gifts to his two children to avoid, in part, estate tax liability. In the absence of fraud or undue influence, which the trial court so found and which findings of fact we earlier determined, are not clearly erroneous, these gifts were proper. The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.