ESTATE OF MELVIN M. MONTGOMERY, DECEASED, LEAH B. MONTGOMERY, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Montgomery v. Commissioner
Docket No. 29658-87
United States Tax Court
T.C. Memo 1988-457; 1988 Tax Ct. Memo LEXIS 501; 56 T.C.M. (CCH) 285; T.C.M. (RIA) 88457; September 22, 1988
Roland A. Suess, for the petitioner. W. Scott Green, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commission determined a deficiency in estate tax in the amount of $ 68,781.19 in respect of the estate of Melvin *504 M. Montgomery, who died on September 29, 1983, a resident of North Dakota. The case was submitted on the basis of a stipulation of facts. After concessions, the remaining dispute relates to the computation of the marital deduction, which in turn depends upon the correct interpretation of Article III of the decedent's will. Article III sets forth a formula by which the amount of property to be given outright to the widow by that article is to be determined. In particular, the issue is whether, pursuant to that formula, the amount this given outright to the widow must be reduced, inter alia, by the amount of property in Article IV which satisfies the conditions for "qualified terminable interest property" of section 2056(b)(7) of the Code. A clearer picture of the problem will emerge shortly. Decedent's will was executed on August 13, 1982. Unless decedent's wife predeceased him she was the only beneficiary of the entire will apart from certain remainder interests in a trust established pursuant to Article IV, hereinafter more fully described. Article II of the will made a specific bequest to the decedent's wife of "all of the household goods, books, apparel, jewelry and *505 all other articles of household or personal use or adornment, any automobiles * * * and * * * all of the oil and gas producing royalties, minerals and other oil and gas properties of every kind and nature * * *". Thereupon, Article III provided for the devise and bequest of property outright to the wife in accordance with a formula as follows: ARTICLE III.
In the event that my beloved wife, LEAH B. MONTGOMERY, survives me, I give, devise and bequeath outright to her, assets of my estate, whether in cash or in kind for a value as of the date selected by my Personal Representative, for valuation of those assets for Federal Estate Tax purposes, equal to fifty percent (50%) of the value of my adjusted gross estate (which term for this purpose shall mean gross estate reduced by the sum of the amounts allowable as a deduction under Section 2053 or 2054, I.R.C. as amended), as finally determined for Federal Estate Tax purposes, less the aggregate value of any property qualifying for the marital deduction which is allowed for Federal Estate Tax purposes by reason of interests in property, irrespective of whether probate or nonprobate, passing *506 or which passed to my wife, otherwise than by the terms of this Article of my Will. However, in no event shall there be included in the said assets or proceeds of any assets with respect to which the marital deduction would not be allowed for Federal Estate Tax purposes. * * * [Emphasis supplied.] Decedent then devised and bequeathed, in Article IV of the will, the "rest, residue and remainder of [his] estate properties" to his Trustee, The First National Bank & Trust Co. of Williston "in trust as a trust fund hereinafter referred to as the 'Melvin M. Montgomery Trust'" (the trust). The trust's "net income" and "such amounts from principal of this trust fund as my Trustee deems advisable or necessary" were to be paid to decedent's wife "in quarterly or more frequent installments during her lifetime * * * for the proper care, support, maintenance and comfort". At the wife's death, 25 percent of the "remaining balance" of the trust estate, including any undistributed income, was to be distributed to decedent's stepson and the remaining 75 percent was to continue in trust with the income to be distributed for the use and benefit of the decedent's two aunts and the children *507 of his stepson. After the death of the two aunts, the remaining trust estate and accumulated income were to be distributed to the children of the decedent's stepson, when they reached the age of 25 years. In addition, the will provides as follows with respect to the trust: (6) No title in the Trust or Trusts created in and by this Article [IV] of my Will, or in the income therefrom, shall vest in any beneficiary, and neither the principal nor the income of any such Trust Estate shall be liable for the debts of any beneficiary, and no beneficiary shall have any power to sell, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in any such Trust Estate created by the terms of this Article, or the income produced thereby, prior to the actual distribution thereof by my Trustee to said beneficiary. The will was admitted to probate in the County Court of Williams County, North Dakota, with decedent's wife Leah B. Montgomery as Personal Representative. Except for $ 625,146 assets transferred to the trust, the estate has not been distributed and no such distribution has been ordered by the probate court. Petitioner filed a Federal estate *508 tax return dated June 27, 1984, and an amended return dated August 20, 1985. The amended return requested a refund as a result of the deletion from the estate of the value of a retirement annuity. That amendment is not in controversy here. On the original estate tax return, dated June 27, 1984, an election was made that $ 300,000 of the assets which passed to the trust be treated as qualified terminable interest property (QTIP) under section 2056(b)(7). The property of this election is not at issue. In addition, no question has been raised as to the property's qualification as QTIP on any other basis. [1] Consequently, the effect of the election under section 2056(b)(7) was to transform the $ 300,000 interest in the trust from terminable interest property not qualifying for the marital deduction into QTIP which is allowed as part of the marital deduction. Section 2056(b)(1) and (7). On both the original and amended estate tax returns, petitioner took a marital deduction consisting of two separate parts, the second of which *509 was the $ 300,000 QTIP. But in computing the amount of the Article III component of the first part [2] (50 percent of the value of the "adjusted gross estate * * * less the aggregate value of any property qualifying for the marital deduction * * * passing or which passed to my wife, otherwise than by the terms of this Article"), the estate failed to reduce the adjusted gross estate by the $ 300,000 QTIP. In his notice of deficiency, the Commissioner disallowed $ 300,000 of the claimed marital deduction. The Government's position here is that decedent's bequest in Article III of his will must be reduced by the $ 300,000 QTIP. It argues that the QTIP is encompassed within that "property qualifying for the marital deduction * * * passing or which passed to my wife" which Article III states is to reduce decedent's bequest to her of "fifty percent (50%) of the value of my adjusted *510 gross estate". The $ 300,000 reduction in the Article III bequest would thus reduce the marital deduction by that amount. The Internal Revenue Code provisions governing this case are all contained within section 2056 of the Code. Section 2056(a) provides that "the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate". Section 2056(b), which is concerned with limitations on the marital deduction in the case of life estates or other terminable interests, then sets forth the general rule in paragraph (1) thereof that no marital deduction under section 2056(a) is allowed for a terminable interest. That type of interest is described therein as an interest passing to the surviving spouse if "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, [the interest] *511 * * * will terminate or fail". An exception to the nondeductibility of terminable interests was created by a new paragraph (7) that was added to section 2056(b) in 1981 in the case of "qualified terminable interest property" (QTIP), [3] a new concept that was then introduced into our estate tax law. Section 2056(b)(7)(A)(i) provides that, for the purpose of the marital deduction, such qualified terminable interest property "shall be treated as passing to the surviving spouse". QTIP is defined in section 2056(b)(7)(B)(i) as property: (I) which passes from the decedent, (II) in which the surviving spouse has a qualifying income interest for life, and (III) to which an election under this paragraph applies. The surviving spouse has a qualifying interest for life in the QTIP if (section 2056(b)(7)(B)(ii)): (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and (II) no person has a power to appoint any *512 part of the property to any person other than the surviving spouse.
Further, section 2056(b)(7)(v) provides that "An election under this paragraph with respect to any property shall be made by the executor on the return * * *. Such an election, once made, shall be irrevocable". The question before us is whether the QTIP elected by the estate here is described in Article III of decedent's will in the language providing for the reduction of the wife's 50 percent bequest by "the aggregate value of any property qualifying for the marital deduction * * * by reason of interest in property * * * passing or which passed to my wife, otherwise than by the terms of this Article of my Will". We conclude that the language does encompass the QTIP and, consequently, that it reduces the bequest in Article III, with the consequence that the widow was given outright in Article III only that amount of property that would bring the material deduction up to 50 percent of the decedent's adjusted gross estate, as was plainly intended in that article. The $ 300,000 QTIP eliminated that amount of property from the Article III computation, which was automatically added to the residuary trust established *513 by Article IV in which the widow was given a life interest. The QTIP itself is, of course, deductible as part of the marital deduction as authorized by section 2056(b)(7). The problem before us can perhaps be better understood by noting another, and even more significant change in respect of the marital deduction that was made in our estate tax law in 1981 by ERTA. Prior to the enactment of ERTA, the amount of the marital deduction was specifically limited by the then section 2056(c)(1) so as not to exceed $ 250,000 or 50 percent of the value of the "adjusted gross estate". That ceiling was entirely removed by ERTA, and thereafter all property included in the gross estate that passes or has passed to the surviving spouse is eligible, without limitation, for the marital deduction. Moreover, the ineligibility of terminable interests in property for the marital deduction was relaxed to the extent of "qualified terminable interest property" as provided in the new section 2056(b)(7) described above. What gives rise to situations like that encountered here is that prior to the 1981 Act there was widespread use of wills containing "formula" bequests and devises to the surviving spouse, *514 so drafted as to make certain that the spouse would receive outright under the will only that amount of property that would bring the total allowable marital deduction up to 50 percent of the "adjusted gross estate". Article III of the will before us obviously embodies such careful draftsmanship, and in all probability follows or adapts one of the standard forms thus used before ERTA. The irony for petitioner here is that the will was executed in 1982, after the 1981 enactment of ERTA, and there was no necessity for any such drafting maneuvering to come within a then nonexisting 50-percent limit. It would seem that the draftsman of the will at issue was probably unaware of the changes wrought by the 1981 Act, [4] and needlessly saw to it that the surviving spouse was to be given only that amount of property outright that would be required to come up to but not exceed the perceived 50 percent limit. And Article III was written in iron-clad terms plainly calculated to achieve that result. If it is read as written, it seems squarely to cover the present case so as to require that the QTIP be taken into account in deciding how much was given to the widow outright by Article III. Counsel *515 has now attempted to make the best out of a bad situation, and we proceed to consider the various arguments that are obviously intended to extricate the estate from the predicament in which it now finds itself. We quite agree with petitioner's opening contention that a testator's intent as expressed in his will controls the legal effect of his disposition. Indeed, the Supreme Court of North Dakota has plainly *516 indicated that in construing the terms of a will its purpose is to ascertain the intent of the testator. Erickson v. Ward,351 N.W.2d 445, 446 (N.D. 1984); Quandee v. Skene,321 N.W.2d 91, 95 (N.D. 1982); Hitz v. Estate of Hitz,319 N.W.2d 137 (N.D. 1982); In re Tonneson's Estate,136 N.W.2d 823 (N.D. 1965); In re Glavkee's Estate,34 N.W.2d 300 (N.D. 1948). If the language of the will is clear and unambiguous, then the testator's intent must be determined from the language of the will itself. Erickson v. Ward, supra;Quandee v. Skene, supra;Graves v. First National Bank in Grand Forks,138 N.W.2d 584, 592 (N.D. 1965). Here, petitioner seems to find ambiguity in two of the phrases used in the portion of Article III of decedent's will which reduces the 50-percent bequest to the wife. First, petitioner argues that "The interest of the surviving spouse was a terminable interest, and therefore did not qualify for the marital deduction". Pet. br. p. 6, par. a. In addition, it argues that the QTIP did not actually pass to the wife. Pet. br. *517 p. 3, par. 5, p. 4, p. 6, par. b. Petitioner's first contention can be readily dismissed. The language put at issue by that contention provides that the Article III bequest is to be reduced by "property qualifying for the marital deduction". Although it appears that the interest given to decedent's wife in the residuary trust would otherwise be a nondeductible terminable interest, the estate's QTIP election made on the estate tax return served to qualify the underlying property for the marital deduction. Neither the effectiveness of the election nor any other basis for disqualification of the property has been raised and, in the absence of any such challenge to the QTIP, there can be no question that the QTIP is "property qualifying for the marital deduction" under Article III of decedent's will. The only language with respect to which there can be said to be any arguable question is the language which describes the property as "passing" or having "passed" to decedent's wife. Petitioner claims that the QTIP did not "pass" while the Government contends that it did. Petitioner's argument seems to be based on a definition of the words "passing or which passed" which equates *518 the word "pass" with actual physical transfer. We find the meaning of the word "pass" to be clear, under both North Dakota law and Federal estate tax law, and we conclude that petitioner's contention must be rejected. Initially, it should be noted that it is not the underlying trust property itself that decedent's will describes as "passing or which passed" to his wife, but "interests in property" which, if so passing, reduce the Article III bequest. Decedent's wife received a life interest in the trust property. There is no question that she did not receive the trust property outright, but that such property was instead transferred to decedent's trustee in trust for the wife and, later, for other beneficiaries. Petitioner's reading of the word "pass" as equivalent to the word transfer is particularly ill suited when applied to a life interest in property, as distinguished from the property itself. Decedent's wife's life estate could not be the object of a transfer under petitioner's definition of the word "pass". Moreover, in North Dakotain the same context as we have before us, i. *519 e., the interpretation of the terms of a will, the word "pass" has been used as the equivalent of "give, devise, and bequeath". Holien v. Trydahl,134 N.W.2d 851, 855-856 (N.D. 1965). This interpretation is consistent with that used by this Court for estate tax purposes. The understood meaning of the word "passing" in the estate tax context is particularly relevant here where the will, obviously drafted by an attorney, uses the phrase "passing or which passed" in a context in which it is clear that the estate tax consequences of the provision of the will were a predominant concern. In such a will, the term is to be given its "accustomed technical meaning according to common legal usage thereof". Old Kent Bank and Trust Co. v. United States,362 F.2d 444, 451 (6th Cir. 1966). Cf. Estate of Harmon v. Commissioner,84 T.C. 329, 336 (1985). Section 2056(c) of the Code states that "an interest in property shall be considered as passing from the decedent to any person if and only if": (1) such interest is bequeathed or devised to such *520 person by the decedent; (2) such interest is inherited by such person from the decedent; (3) such interest is the dower or courtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent; (4) such interest has been transferred to such person by the decedent at any time; (5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship; (6) the decedent has a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or (7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person.
Of the seven means of "passing" property listed under subsection (c), only one, in paragraph (4), reflects the definition to which petitioner claims the word, as used in decedent's will, must be limited. Section 2056 does *521 not so limit the word passing, but, instead, provides that property also passes if it is "bequeathed or devised" or "inherited". As hereinbefore noted, these latter meanings are more in keeping with the "passing" of the wife's life estate than is the meaning which petitioner presses on us. Moreover, in this Court, we have given the word "passing" the same broad meaning as is set forth in section 2056(c). In Parker v. Commissioner,62 T.C. 192 (1974), we held that property passed to the decedent's spouse under his will despite the fact that the spouse did not receive the property, but allowed it to be disributed to a residuary trust. In that case the Court explicitly stated that "We do not think the words 'passes or has passed,' * * * can be equated with 'distributed'". Parker,62 T.C. at 197. [5]
*522 Another indication of the meaning of "pass" is provided by Estate of Hoelzel v. Commissioner,28 T.C. 384 (1957). Although the word "pass" was not explicitly defined or discussed therein, the holding, in circumstances essentially like those before us, supports the Government's contention here that the QTIP passed. In Estate of Hoelzel, the decedent's will provided that (at 386): The property devised and bequeathed by this Article shall be reduced by the portions of such gross estate which pass to my wife, but do not constitute a part of my estate at the date of my death, and by the portions which pass to my wife by virtue of the bequests of Article One hereof. * * * [Emphasis supplied.]
The Court held that the bequest was properly reduced by life interests that the decedent's spouse received on his death in payment of annuity and insurance contracts. It was determined that the life interests were, under the foregoing provisions of the decedent's will, "portions of [his] gross estate which pass to my wife" and that they, consequently, reduced the bequest to the wife. [Emphasis supplied.] Given the usual technical meaning accorded the *523 term "pass" in a will, as distinguished from transfer or distribute, there can be no doubt that the life interest in the QTIP passed to decedent's wife. It devolved to her under the terms of decedent's will, regardless of whether it was distributed. Moreover, there is no basis for concluding that the QTIP, by virtue of its character as such or more generally as a type of terminable interest property, does not pass in the same manner as other property. Even before QTIP was given special treatment and excepted from the disallowance for terminable interest property, it was recognized that terminable interests "pass". The legislative history of the Revenue Act of 1948, which first disallowed the deduction of terminable interests, is replete with references to them as interests which pass. See S. Rept. No. 1013, 80th Cong., 2d Sess. 28 (1948), 1948-1 C.B. 285, 305; S. Rept. No. 1013, Part 2, 80th Cong., 2d Sess. 7-15 (1948), 1948-1 C.B. 331, 341-344. Their disallowance in 1948 from the marital deduction was in no way based upon their not passing to the surviving *524 spouse. To the contrary, the deduction was disallowed as to these interests, despite their passing to the spouse, in order to promote another policy. That policy was to "equate the decedent in the common-law State with the decedent in the community-property State". S. Rept. No. 1013, 80th Cong., 2d Sess. 28 (1948). See United States v. Stapf,375 U.S. 118, 128 (1963); Estate of Schildkraut v. Commissioner,368 F.2d 40, 42 (2nd Cir. 1966). Such equality was best served if terminable interests were not allowed as part of the marital deduction and that deduction was "restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate". United States v. Stapf,375 U.S. at 128. See Dougherty v. United States,292 F.2d 331, 337 (6th Cir. 1961). The broad category of terminable interests was thus recognized as passing, but disallowed as a deduction nonetheless in order that the property not escape estate taxation completely. Dougherty,292 F.2d at 337; Doughty v. United States,296 F.Supp. 1078, 1081 (D. Mont. 1969). The fact that QTIP *525 was set aside from other terminable interests for more favorable treatment by section 403(d) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 302, cannot be said to have changed the nature of QTIP from property which is regarded as passing to the decedent's spouse. In 1981, QTIP was recognized as passing, although not "passing outright". H. Rept. No. 97-201, 160 (1981), 1981-2 C.B. 378. Petitioner argues that the interpretation of Article III of decedent's will requiring the reduction of the bequest therein by the QTIP would seriously compromise the decedent's testamentary intent to leave his wife half of his "adjusted gross estate". [6] Pet. br. p. 5; Pet. rep. br. p. 4-5. On the record before us, all we can do is attempt to glean the decedent's intent from the words of the will he left behind. Based on those words, we conclude that the Article III bequest must be reduced by the QTIP. Petitioner additionally argues that such interpretation of the will's language will result in "a possible double tax on the $ 300,000.00". Pet. br. p. 8. This argument is midguided. *526 To be sure, the QTIP is likely to be included in the wife's estate at her death under section 2044. However, this is the correct result since that same property will have generated a marital deduction for the decedent's estate. Petitioner's argument fails to take into account that, when the QTIP is treated as part of the 50-percent bequest to the spouse, it also counts as part of the property passing to the spouse which makes up the marital deduction. As we interpret the will, the QTIP is a factor that must be taken into account in the computation of the 50-percent limitation established by Article III. Consequently, less of the decedent's other property passes to the wife outright. The QTIP passes to her and generates a marital deduction, while less of the decedent's other property passes to her under Article III and, consequently, the marital deduction stems from less of that other property. The QTIP does results in a marital deduction to decedent's estate and the later application of section 2044 to the wife's estate does not constitute double taxation of the QTIP. Decedent's bequest under Article III is reduced by the QTIP elected. Decision will be entered under Rule *527 15.
Footnotes
1. Thus, there is no issue before us in respect of the problem involved in Estate of Howard v. Commissioner,↩ 91 T.C.    (Aug. 23, 1988). 2. On the original return the amount claimed for the first part was $ 708,952, but this was reduced to $ 636,449 in the amended return, the difference being attributable presumably to the elimination of the annuity component of the gross estate -- a matter not in dispute here. See supra,↩ p. 4. 3. Section 403(d)(1) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 302. ↩
4. A strong indication that the will was carefully drafted to take into account the pre-ERTA provisions of the Code is the use of the term "adjusted gross estate" in Article III. That term had previously appeared in section 2056(c) of the Code, but was no longer of any relevance in respect of the marital deduction and had completely disappeared in section 2056↩ as revised by the 1981 Act. Indeed, the term "adjusted gross estate" is one that generally has no relevance in the entire estate tax law except for the provisions dealing with the extensions of time for payment of tax where the estate consists largely of an interest in a closely held business. Secs. 6166 and 2035(d)(4). 5. North Dakota has also distinguished property which "passes" from that which is distributed but has done so in the context of intestate succession, not succession by will. Hoffman v. Hoffman's Heirs,73 N.D. 637, 17 N.W.2d 903, 905↩ (1945). 6. See n. 4, supra,↩ as to significance of term "adjusted gross estate".